## SUPREME COURT.

### JACOB SHARP agt. THE MAYOR, &c. of NEW YORK.

Upon the authority of the case of *Bennett* agt. *Judson*, (21 *N. Y. R.*, 238,) it must now be considered as settled law, that if a party makes representations in such a manner as to import a knowledge in him of facts, whilst in fact he has no knowledge of the facts, and the representations are made with the intent that another shall rely on them, and that other does rely on them, and those representations *turn out to be false*, it is as much *a fraud* as if the party making them *knew them to be untrue*.

Where a *complaint* states the representations that *were made*—stating them as representations of fact made by the defendants of their own knowledge, and not as expressions of opinion or belief, that *those representations were false*; that the plaintiff relied on them, and that he suffered damage thereby:

*Held,* that proof of these facts would be sufficient to entitle the plaintiff to recover, unless the defendants could in some mode justify the representations. Upon these facts the law *adjudges fraud*; and it is not therefore indispensable that the complaint should in terms *allege fraud*; and its omission does not substantially vary the cause of action. If material, however, the complaint could be amended on the trial by inserting the allegation.

In such case a judgment would not be reversed, although the amendment had not been actually made.

In an action for damages for false representations in conveying leasehold premises, the objection that *oral proof* of the representations is inadmissible on the ground that it tends to contradict the written lease, cannot prevail, where the evidence offered is not for the purpose of showing that it was intended to pass something which by the terms of the lease did not pass, but for the purpose of showing what the terms of the lease would have passed if the representations *had been true.*

The *principal* is liable for the *false representations of the agent* made in and about the matter for which he was appointed agent; and whatever the agent does or says in and about that matter, is the act and declaration of the principal, for which the principal is just as liable as if he had personally done the act or made the declaration.

And there is no principle of the common law by which the incidents attaching to the appointment of an agent, when that appointment is made by a *corporation,* are more restricted than when the appointment is by an individual.

If the *corporation of the city of New York* have power to negotiate a lease of a slip in that city, and in the course of such negotiation to render itself liable for any misrepresentation made in relation thereto, it has also power to appoint an *agent* (a committee of the common council) to conduct such negotiation; and from such appointment there flows to the *agent the power to render the corporation liable for any misrepresentation.*

*New York General Term, August,* 1863.

SUTHERLAND, CLERKE and BARNARD, *Justices.*

APPEAL by defendants from a judgment in favor of the plaintiff, rendered at special term. It appears that the plaintiff obtained from the defendants a lease of a slip; and it recites the resolution of the common council, on the 16th June, 1852, directing the leasing to plaintiff of the slip at the foot of Wall street, or so much thereof as belongs to the city. The lease, which is dated the first day of July, conforms to the resolution, and uses in the leasing clause the very words of the resolution—the same qualifying words are used again in the habendum clause.

It is further provided by said lease as follows : "And it is hereby mutually covenanted and agreed by and between the parties to these presents, and these presents are upon the express understanding, that nothing herein contained shall be taken or construed to operate as a covenant by said parties of the first part, or their successors, for possession or quiet enjoyment by said party of the second part, &c., of the said ferry or right to ferriage ; nor shall the same be taken or construed to interfere in any manner with any previous grants or rights made by said parties of the first part, * * * nor to operate further than to grant the possession of the estate, right, title or interest which the said parties of the first part may have or lawfully claim in said ferry and right to ferriage by virtue of their charter," &c. The plaintiff covenanted to pay to the city $20,000 per annum rent for the use of said ferry, in quarter-yearly payments. At the time this lease was applied for, one Murray had or claimed the right to a portion of the slip, which rendered the slip useless for the purpose of a ferry. The right of Murray to the portion claimed by him was established by a judgment of the superior court, and the plaintiff, in order to get the use of the whole slip, rented of Murray his portion of the slip at the annual rent of $4,000. In October, 1853, parties owning the whole or some part of the interest of said plaintiff under said lease, applied to the common council to reduce the rent of said slip, and it was reduced to $5,000 per annum. This fact was set up in the answer, but without any allegation as to whether the reduction, thus made, was in consideration of the claim of Murray to said slip. The gravamen of the plaintiff's action is the misrepresentation made by the agents of the city, and by means of the maps in the street commissioner's office, that the city owned the whole slip, whereas in truth and in fact a portion was owned by said Murray.

JOHN E. DEVELIN and WM. CURTIS NOYES, *for appel'ts.*
D. DUDLEY FIELD, *for respondent.*

By the court, BARNARD, Justice. It must now be re-
garded as settled, that if a party makes representations
in such manner as to import a knowledge in him of
facts, whilst in fact he has no knowledge of the facts, and
the representations are made with the intent that another
shall rely on them, and that other does rely on them, and
those representations turn out to be false, it is as much a
fraud as if the party making them knew them to be un-
true. (*Bennett* agt. *Judson*, 21 *N. Y., p.* 238.)

Upon this principle, (the character of the representa-
tions, the reliance of the plaintiff on them, the falsity of
them, and whether the plaintiff was damaged thereby,
having been submitted to the jury, and by them found in
plaintiff's favor,) the defendant here is clearly liable,
provided the committee had authority to bind it, and
provided there is no objection to a recovery by reason of
the frame of the complaint, and also provided the oral
proof of the representations introduced does not fall
within the rule prohibiting a written instrument from
being altered, varied or modified by parol evidence.

As to the objections to the form of the complaint, this
is on the ground that the complaint did not state any
fraudulent, willful or intentional misrepresentation.

The complaint, however, states the representations
that were made, stating them as representations of fact
made by the defendants of their own knowledge, and not
as expressions of opinion or belief that those representa-
tions were false ; that the plaintiff relied on them, and
that he suffered damages thereby.

Proof of these facts would be sufficient to entitle the
plaintiff to recover, unless the defendant could in some
mode justify the representations. Upon these facts the
law adjudges fraud. It would undoubtedly have been

more in consonance with the verbiage of the former system of pleading, to have alleged fraud; but it seems scarcely necessary now to put in a pleading these sound-.ng phrases, which are the mere result adjudged by the law to arise on the facts alleged. But the omission of such an allegation as this does not substantially vary the cause of action. The whole frame of the complaint clearly shows what the cause and nature of the action was intended to be. If material, the complaint could have been amended at the trial by inserting this allegation as an allegation material to the cause of action mapped out in the complaint.

In such case a judgment will not be reversed, although the amendment has not been actually made.

As to the objection that oral proof of the representations is inadmissible, on the ground that it tends to contradict, &c., the written lease—

This evidence was offered and admitted, not for the purpose of showing that it was intended to pass something which by the terms of the lease was not passed, but for the purpose of showing what the terms of the lease would have passed if the representations had been true.

In this view, the objection to this testimony on this point, that a written instrument cannot be contradicted, etc., by parol evidence, is untenable. (*Whitney* agt. *Allaire*, 1 *Coms.*, 308.)

Indeed, the case of *Whitney* agt. *Allaire* is almost identical with the present case. That action was covenant brought for rent on an instrument in the following words : " I have this day hired of Stephen Whitney the water lot and his right to the wharf on the east side of Market slip for one year, from 1st of May next, at the yearly rent of $1,000, and taxes on said water lot, whatever it may be, the rent to be paid quarterly. 9th February, 1837."

The defendant claimed damages by reason of representations made by plaintiff respecting the extent of his right.

Parol evidence was admitted to prove the representations, and such admission was held proper notwithstanding the objection that plaintiff demised only his right.

There is no essential difference between the expression "all my right," and the expression "so much as belongs to me."

As to the authority of the committee to bind the corporation by representations—

In *Sandford* agt. *Mundy*, (23 *Wend.*, p. 267,) the defence consisted in false and fraudulent representations as to the cost, location and value of certain property, made by one who was plaintiff's agent, to effect a sale of the property. On the trial the evidence of the representations was excluded. On appeal, the evidence was held to be admissible. The court, in its opinion, says : "If the agent, at the time of the contract, makes any declaration, representation or admission touching the subject matter of the contract, it is the representation, declaration or admission of the principal. These principles are fully borne out by the authorities referred to—founded in good sense, and with a just conception of the commercial and other business transactions of life from which they have been derived." And again, the court says : "The agent here had power to procure the subscription to the contract of sale ; and, in the absence of special instructions to the contrary, at least, does not this imply the right to use the ordinary means and inducements to accomplish the end ? Must not the plaintiff have expected that the agent would speak of the property, its situation, quality ?" etc.

"This is laid down as a general principle, and upon reason and authority is applicable to both special and general agents."

And the point having been raised that the principal should not be held responsible for misrepresentations, as no authority to deceive and defraud can properly be im-

plied as one of the means, the court say : " There is un-
doubtedly much force in this view, and at a very early
day it carried with it the judgment of the court. (*Bro.
Abr. Action on the Case, p.* 8.) But Lord HOLT overruled
that decision, and held him liable. This has been ap-
proved law ever since."

Again, in the case of the *Bank of the United States* agt.
*Davis*, (2 *Hill*, 451,) this language is held : " Nor is there
anything novel or singular in the idea that an agent may
be guilty of fraud and deception in transacting the busi-
ness of his principal, or in the law that holds the latter
responsible for the consequences to third persons. The
doctrine is very familiar and of every-day application in
the administration of justice."

No authority has been cited overruling these principles.

Thus, unless a different rule obtains, where a corpora-
tion is principal, the defendant here is bound by the rep-
resentations of its committee. There can be no doubt
but that the representations here were such as touched
the very matter with which the committee was charged—
equally so with the representations in 23d *Wend.*

Now, does a different rule obtain in this respect, when
a corporation is principal ?

The general principle, that a corporation may delegate
to agents the performance of any act which it can itself
perform, is well established. Now, there is no doubt but
that the corporation might itself have entered into nego-
tiations respecting the leasing of the slip, and have set-
tled on the terms. That power, then, it could confide to
its agents. Can there be any doubt but that, if the cor-
poration had negotiated this lease, and in the course of
such negotiation had made these representations, it could
escape liability on the ground that it had no power to
make them ? The granting to a body aggregate certain
powers, rights and privileges, which it may use, possess
and enjoy, will not give that body immunity from wrongs

or unlawful acts committed by it in the carrying out of those powers, or in the execution of any act it may be authorized to perform.

The suggestion that a corporation cannot be liable for a fraud committed, may be correct as to frauds not in any way connected with or committed in the course of and tending to carry out some power or act which it is authorized to perform, but it is not correct as to fraud so connected or committed.

A fraudulent representation is in effect a wrongful and unlawful action; and the argument is, that a corporation has no power to commit a wrongful or unlawful act, and, having no power to commit it, it is not liable therefor.

But it is held, that a corporation may be sued for an unlawful conversion of goods, and damages recovered, if it be found to have unlawfully converted them. (*Reid* agt. *Fulton*, 7 *Cow.*, *p.* 485.)

So also it may be sued and damages recovered for an unlawful refusal to permit stock to be transferred. (*Bank of the United States* agt. *Davis*, 2 *Hill*, 451.)

In these cases the argument that the corporation was not invested by its charter, or by its stockholders, with power to commit any unlawful act or wrong, and that it could not by any wrongful or unlawful act affect the interests of the stockholders, was applicable to the same extent as it is in the present case; and those arguments were strenuously urged in the case in 7th *Cowen*.

It is urged that a corporation will not be affected by any representation made by an agent, unless the agent was directly authorized by resolution to make the particular statement.

The principal is liable for the false represenations of the agent made in and about the matter for which he was appointed agent, not on the ground of express authority given to the agent to make the statement, but on the ground that as to the particular matter for which the

agent is appointed he stands in the place of the principal, and whatever he does or says in and about that matter is the act and declaration of the principal, for which the principal is just as liable as if he had personally done the act or made the declaration.

The power of the agent to render the principal liable for representations, flows from his mere appointment to do the act or transact the business in and about which the representations are made. This is clearly the doctrine of the case in 23d *Wendell*.

There is no principle of the common law by which the incidents attaching to the appointment of an agent, when that appointment is made by a corporation, are more restricted than when the appointment is by an individual.

No train of reasoning has presented itself which leads to the conclusion that there is any necessity or propriety in establishing the doctrine that when an agent is appointed by a corporation, the incidents attaching to that agent are more restricted or of a different nature than in other cases.

It is not meant to be asserted that a corporation can bind itself in all matters to the same extent as an individual can, or that, by the appointment of an agent, it can bind itself in matters as to which its own act would not bind. But it is meant to be said, that where a corporation has power to do some act, and, as incident to that act, to render itself liable for representations made in and about the doing of that act, it can appoint an agent to do that act, and from the mere fact of such appointment the same powers will flow to the agent as if he had been appointed by an individual, provided only, that the powers so flowing could have been exercised by the corporation itself.

In this case, the corporation had power to negotiate a lease of the slip, and in the course of such negotiation to render itself liable for any misrepresentation made in

relation thereto; it had also power to appoint an agent to conduct such negotiation, and from such appointment there flowed to the agent the power to render the corporation liable for any misrepresentation.

As to the representation made by the comptroller and corporation counsel, the point made by appellant, that plaintiff took the lease with knowledge given him by its terms, that there was a question as to the extent of defendant's right, is fully met by the evidence of what took place between him and the comptroller and the corporation counsel. In this view, that evidence was certainly proper.

The resolutions of September 8, 1852, and 4th October, 1852, and the survey of Ludlam, were properly received in evidence, for the reasons mentioned by the judge who presided at the trial, in his charge to the jury.

This survey and these two resolutions were also admissible in another view, viz., to show ratification.

Shortly prior to September 8, 1852, the plaintiff communicated to the defendant's officers that his possession of the property, which had been represented to him to belong to the city, was obstructed. The defendant then passed a resolution directing the property to be surveyed. It was surveyed, and the surveyor made a map representing the property to belong precisely in accordance with the representations made to the plaintiff. Thereupon, on the 4th October, 1852, another resolution was passed, reciting the survey, and that the lessee had been obstructed in obtaining possession, and directing the common council to put and keep the lessee in possession and enjoyment of the property as laid down on the map.

Reasonable intendments and presumptions are to be drawn from the acts, whether of individuals or corporations.

Now, it is rather extraordinary, if the common council had not deemed the corporation obliged in good faith to

protect the plaintiff in the possession of the whole of the premises, that this course should be pursued. If the only information on the subject which they had was what appears by the terms of the lease, they would at once have said what their counsel now urges us to say for them : We only leased you what we owned ; we neither contracted to put or keep you in possession of any specified portion of the slip ; you took the lease on your own responsibility, being well apprised that there was uncertainty as to the extent of our ownership ; we are not obliged, either in law or in good faith, under these circumstances, to enter into any litigation on the subject. If, on the contrary, they were informed of the representations made by their committee, it was very natural for them to say : True, those representations were unauthorized, but you took the lease relying on them, and we consider ourselves bound by what our committees have represented, and will therefore do all in our power to put and keep you in possession of what our committee represented we owned.

It can be readily imagined that this was the line of argument urged in the debate respecting the adoption of these resolutions.

The reasonable presumption and fair intendment is, that the common council, when they passed these resolutions, knew of the representations that had been made, and passed the resolutions in view of them. This is a ratification of the act of the committee in making such representations. This was the time for the defendants to rescind and make restitution. But instead of doing that, they chose to contest the claim of Murray, and by the passage of these resolutions not only ratified the representations of their committee, but in effect again represented that they owned the property.

These views dispose of the objections to the admission of evidence of the representations made by the committee,

of the resolution directing a survey and of the resolution of October 4, and of the first eight points made by the appellant, except the objection to the representations made by the street commissioner. This, if an error, is cured by the charge of the judge, who in effect charged the jury to disregard it.

There are two remaining points urged by the appellants : First. That the plaintiff's application for a reduction of the rent after the representation, and after he knew of the adverse claim, and his acceptance of the reduction and instrument by which it was made, he cannot recover ; and this is urged on three grounds :

1. That the reduction was in fact made in part by reason of the adverse claim.

2. That the plaintiff in his petition suppressed the fact of this claim, which suppression must be deemed fraudulent.

3. That by accepting the instrument reducing the rent, he, knowing of the representation, has affirmed the lease to be good in every respect.

The charge of the judge is very satisfactory on these points ; but there is an additional reason why they do not form an answer to this action. At the time of the application for a reduction of rent, and of the acceptance of the instrument reducing it, the defendants were defending the plaintiff in a suit brought in respect to this piece of property, which had not then been tried.

Plaintiff's calling on defendant to put him in possession of the land, which had been represented to belong to it, and to protect him therein, was a clear assertion of an intent to hold it responsible, if it was unable to give him what he ought to have.

Defendants, by the resolutions of September 8, 1852, and October 4, 1852, and the defence of the suit brought by Murray, for the reasons stated when speaking above of those resolutions, recognized the liability.

Pending that suit, both parties must have considered the claim as in abeyance ; consequently there was no concealment, nor could the acceptance of the subsequent instrument be a waiver of a claim considered by both parties to be in abeyance.

With respect to the objection to the rule of damages, it is only requisite to refer to the views expressed by the judge on the trial.

Judgment affirmed, with costs.

SUTHERLAND, J., concurred.

### Dissenting opinion.

CLERKE, J. This action must be regarded either as an action *ex contractu* for the breach of an implied or an express covenant in the lease, or as an action *ex delicto* for fraudulent representations.

I. That it is an action *ex contractu* is, I believe, scarcely pretended. The lease so clearly provides, on the part of the defendants, against any liability of this kind, that it can scarcely be maintained for a moment that such an action could be sustained. The lease demises only so much of the slip as belongs to the lessors, (*pp.* 110 *and* 112 *of the case,*) and in the concluding clauses " it is mutually covenanted and agreed that these presents are upon the express understanding that nothing herein contained shall be taken or construed to operate as a covenant by the parties of the first part for possession or quiet enjoyment by the party of the second part, &c., of the said ferry or right of ferriage ; nor shall the same be taken or construed to interfere in any manner with any previous grants or rights, &c., nor to operate further than to grant the possession of the estate, right, title or interest which the parties of the first part may have or lawfully claim to the said ferry or right of ferriage, hereby demised by virtue of their several charters and the various acts of

the legislature of the state of New York." (*Fols.* 125 *and* 126 *of the case.*)

II. Can this action be maintained on the ground of fraudulent representations ? I presume that a corporation is not exempt from liability for misrepresentations which affect the rights of other persons ; and a purchaser or lessee of property belonging to the corporation, if he is deceived and enticed into making a contract by the misrepresentations of the corporation, and is damnified by such misrepresentations, can maintain an action against it. But, nothing is better settled in the law, that the declarations of any individual member or officer of a corporation will bind it, unless they are within the scope of his ordinary powers, or of some special agency relative to the subject matter. Even declarations made by the mayor himself, or declarations in any form made by one branch of the common council, could have no such effect ; much less can it be bound or affected by the declarations or acts of committees or individual members of committees, not expressly authorized by the whole legislative department of the corporation to make these declarations or perform these acts. Otherwise, there would be no safety for a day for the rights of any corporation ; and notwithstanding all the restrictions and care with which the law surrounds those rights, we all know to what an extent they are trifled with and bartered away by faithless officials and unscrupulous claimants. I therefore consider that all the acts and declarations of the officers of the defendants in the present case, and of committees and individual members of committees, were totally inadmissible as evidence, and that the judge erred in admitting them. Indeed, I think the defendants were clearly entitled to a dismissal of the complaint when the plaintiff rested his case.

The judgment should be reversed, and a new trial granted ; costs to abide the event.