## JOHNSON *v.* HATHORN.

### June, 1866.

Defendant having agreed to transfer to plaintiff full paid stock, fraudulently induced him to accept stock that was, on its face, but half paid, with a deceptive and ineffectual guaranty. *Held*, that he was liable therefor in an action for deceit.[*]

One who uses words in a deceptive and double sense, for the purpose of deceit, is bound by them in the sense in which he used them.

Where plaintiff alleges facts entitling him both to legal and equitable relief, and demands both, the court may award either that is appropriate to the case made by the proof.

Henry Johnson sued Rowland P. Cooley (for whom, on his death pending the action, Henry H. Hathorn, his executor, was substituted as defendant), for deceit in an exchange of property.

Johnson owned a house and lot, which he offered for sale. Cooley called on him and negotiated for its purchase. Johnson's price was six thousand dollars. Cooley offered five thousand dollars in the stock of the Mutual Bank of Castleton,

---

[*] See Barker *v.* Bradley, 42 *N. Y.* 319.

Vermont, and five hundred and twenty-five dollars in cash. This offer was made and accepted orally. Pursuant to it, Johnson gave a deed of his property and surrendered possession, and Cooley gave him his covenant to transfer five thousand dollars of the capital stock of the bank, then standing in Cooley's name, and this covenant contained a guarantee that the amount of capital stock of the bank *on which it commenced business* was paid in and unimpaired. Cooley paid enough in cash, to amount, with the accrued dividends, to the five hundred and twenty-five dollars additional. When Cooley came to deliver the stock, it appeared by the face of the certificates that it was subject to the payment of fifty dollars per share; in other words, was only half paid.

To induce Johnson to accept this, notwithstanding, Cooley drew and delivered to him a covenant, " to indemnify and save harmless the said Johnson from any liability to be called on to pay any further installment for capital stock in, &c., . . . and in the contingency that the officers of said bank should hereafter declare an installment and order it paid in, with intent to increase the capital stock thereof, and the said Johnson should neglect or refuse to pay such installment, the intent and meaning of this instrument is to be, on reasonable notice given, to indemnify and save harmless the said Henry Johnson from refusing or neglecting so to do." This covenant was given April 12, 1860.

In August, 1861, plaintiff (who had meanwhile been absent in California), commenced this action, in which he alleged these facts (averring, however, that the agreement to exchange was in writing) ; and that he supposed, and defendant knew that he supposed, in agreeing to take the stock, that it was full paid stock, and that defendant intended to, and did thereby, defraud him.

The relief demanded by the complaint was, judgment for the two thousand five hundred dollars deficiency in the stock, and that the same be declared a lien on the house and lot, as part of the purchase money; and that the house and lot be sold therefor.

The defendant insisted that the agreement to exchange was void by the statute; that the half paid stock was accepted in

payment, and that the guaranty merged all prior understandings.

The judge found the substantial facts above stated, as to the exchange, the conveyance, the covenant to transfer the stock, and the guaranty, and the belief of plaintiff intentionally induced by defendant, that in receiving the scrip and guaranty he was receiving full paid stock to the amount of five thousand dollars; and that plaintiff would not have otherwise received it. He accordingly gave judgment for plaintiff for the sum claimed, with interest, but did not adjudge it a lien on the property sold.

*The supreme court*, at general term, affirmed the judgment. They held, among other things, that the objection that the judgment was for legal relief merely, under a complaint asking for equitable relief, was untenable; for fraud and damages entitle to relief in *any* court, and the judgment could not be reversed because of the form of the action, if justice had been done. Also, they held, that the fraud in the guaranty vitiated it, and prevented the application of the rules that parol evidence was not admissible to explain a writing, and that a later agreement merges a prior one on the same subject. They accordingly affirmed the judgment. Defendant appealed; and the main questions were, whether the frame of the action allowed the recovery of damages, and whether a false affirmation, as to the contents or effect of a written instrument which is open to the party, will sustain an action. See Starr *v.* Bennett, 5 *Hill*, 306; Jarvis *v.* Palmer, 11 *Paige*, 630; 29 *Barb.* 595; 9 *Id.* 532; 9 *Conn.* 96.

*A. Pond*, attorney for defendant, appellant.

*W. A. Beach*, for plaintiff, respondent.

BY THE COURT.—PORTER, J.—On the facts found by the judge the plaintiff was entitled to judgment. The original agreement for the sale of the property was not in writing, but it was performed by the plaintiff when he executed the conveyance, and the defendant, who took the benefit of the contract

was bound to fulfill it on his part. Thomas v. Dickinson, 12 N. Y. (2 Kern.) 364. He agreed to pay five thousand five hundred and twenty-five dollars as the price, and two thousand five hundred dollars of this amount has neither been paid by him nor released by the plaintiff. Five thousand dollars of the purchase money was to have been paid in stock of the Mutual Bank of Castleton. He paid half the amount in that stock, and the delivery and acceptance of this scrip reduced *pro tanto* the amount of his liability, but did not extinguish it as to the residue.

At the time the conveyance was executed and delivered, he was not prepared to transfer the stock as he had agreed; he induced the plaintiff to accept a covenant, the purpose of which, on his part, evidently was to merge the original agreement under the pretense of fulfilling it, and by this device to defraud the plaintiff of two thousand five hundred dollars of the purchase money. To this end he gave the plaintiff to understand, as well at the time of the original agreement as at each of the subsequent transactions, that the scrip he was to receive represented, in fact, full paid stock to the amount of five thousand dollars; and this he knew to be false. He afterwards induced him, by the same fraudulent means, to surrender this covenant on receiving a certificate, nominally for fifty shares of one hundred dollars each, but really representing only half that amount of stock.

If the liability of the defendant depended on his written consent, he would still be responsible for the remaining two thousand five hundred dollars of stock. In that instrument he agreed to transfer to the plaintiff five thousand dollars of the stock of the Mutual Bank, and this agreement he has only in part performed. He can derive no aid from the adroit and slippery language of the subjoined guaranty. One who uses words in a deceptive and double sense, for the purpose of misleading the party with whom he contracts, is bound by them in the sense in which he intended they should be understood. Hoffman v. Ætna Ins. Co., 32 N. Y. 405; Barlow v. Scott, 24 Id. 40; Mowatt v. Lord Londesborough, 3 Ell. & B. 334, 367; S. C., 25 Eng. L. & Eq. 25; and see 4 Ell. & B. 1.

The surrender of the covenant, having been procured by the

fraud of the defendant, cannot shield him from liability. It is true that the terms of the stock certificate put the plaintiff upon inquiry; but he made the inquiry promptly, and the defendant, knowing the truth, deceived him. Mead v. Bunn, 32 N. Y. 275; Williamson v. Brown, 15 Id. 354; Sharp v. Mayor, &c. of N. Y., 25 How. Pr. 389, 390; Bradley v. Bosley, 1 Barb. Ch. 125; Cooke v. Nathan, 16 Barb. 342.

But there was no merger of the parol agreement to pay the stipulated price. The subsequent writings, signed by the defendant, neither superseded nor extinugished his previous undertaking; and oral evidence was properly received to show the terms of the unwritten contract, and to expose and defeat the fraud attempted to be practiced by means of these writings, under color of carrying out his original engagement. Hutchins v. Hebbard, 34 N. Y. 24; Bradley v. Bosley, 1 Barb. Ch. 125, 152; Johnson v. Miln, 14 Wend. 195; Morris v. Whitcher, 20 N. Y. 41.

Upon the state of facts established by the proof and found by the judge, the motion to dismiss the complaint was properly denied. We have no authority to reverse the judgment, by reason of defects in the pleadings, which did not affect the substantial rights of the defendant. Code of Pro. §§ 11, 169. The averment in the complaint that the original agreement was in writing was not sustained by the proof; but we are bound to treat the variance as immaterial, in the absence of affirmative evidence that it misled the adverse party. Code of Pro. § 169. The gravamen of the allegation was, that such an agreement was made, and the question whether it was written or oral was unimportant, except so far as it affected the mode of proof. The judge was therefore at liberty, without directing an amendment, to find the facts in accordance with the evidence. Code of Pro. § 171. The findings were within the scope of the allegations, and there was no failure of proof within the meaning of the Code.

Upon the facts alleged, the plaintiff was entitled to equitable as well as legal relief; and, as he demanded both, the judge was right in awarding that which seemed appropriate to the case made by the proof. Emery v. Pease, 20 N. Y. 62, 64;

Bedford *v.* Terhune, 27 *How. Pr.* 422; Lounsbury *v.* Purdy, 18 *N. Y.* 515; Byxbie *v.* Wood, 24 *Id.* 607.

Other exceptions were taken on the trial which it is not material to discuss, as they are all plainly untenable.    The cause was well tried, and the judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs, and ten per cent. damages.