NICHOLAS MAUGER and CHARLES F. AVERY, Appellants, v. THOMAS SLAVIN, as Assignee of JOHN R. PILLING and DANIEL SCULLEN, Respondent.

*Fraud on a sale — ambiguous deceptive words of the vendees as to their solvency construed as understood by the vendors — fraudulent intent.*

Where vendees do not, in terms, state to their intending vendors that they are solvent, but use words in a deceptive sense, in order that the vendors may so understand them, the vendees will be deemed to have used the words in the sense in which they intended that the words should be understood by the vendors.

Where vendees, who are manufacturers of woolen goods, ask the vendors to send a consignment of wool at once, stating that they have "sold goods to deliver and must get them out soon," when, in fact, they have sold no goods, and have only an arrangement with a commission house to take the goods and to sell them (being informed by the commission house that the goods could be sold as soon as received), the question whether the explanation given by the vendees for this variance from the truth is sufficient to indicate that there was no intent on the part of the vendees to deceive should be submitted to the jury.

The fact that a person has reason to believe his statement to be false is evidence tending to prove a fraudulent intent upon his part.

The question of fraudulent intent is one of fact for the jury.

APPEAL by the plaintiffs, Nicholas Mauger and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Albany on the 6th day of March, 1896, upon a nonsuit granted by the court after a trial before the court and a jury at a Trial Term of the Supreme Court held in and for the county of Albany.

*Henry A. Strong,* for the appellants.

*P. D. & Smith Niver,* for the respondent.

MERWIN, J.:

This action was brought to recover the possession of 1,100 pounds of wool, being part of a lot of 3,000 pounds sold and delivered by the plaintiffs to Pilling & Scullen, the assignors of the defendant, on the 9th of May, 1895. On the 24th of May, 1895, Pilling & Scullen made a general assignment for the benefit of creditors to

the defendant Slavin. The plaintiffs thereupon demanded of the defendant the wool in question which came to his possession as assignee; and, upon his refusal to deliver, this suit was brought upon the theory that the purchase by the assignors from the plaintiffs was induced by fraudulent representations of the assignors as to their solvency. The nonsuit was granted upon the ground that the evidence was not sufficient to authorize the jury to find that the purchase by the assignors was fraudulent.

Pilling & Scullen were engaged in the manufacture of knit goods, at Cohoes, and the plaintiffs did business in New York. Prior to the transaction in question the plaintiffs had not sold any goods to Pilling & Scullen, except one or two small lots, and did not know what their financial credit or standing was. On May 3, 1895, Pilling & Scullen wrote plaintiffs, asking if they had the kind of wool, such as the small lot previously bought, and said: "We are to use 6000 lbs that we know of now, do you want to sell us this in two bills 2000 lbs each on 4 months int. after 60 days at the lowest price you would to any one." To this the plaintiffs replied, declining to sell on four months' time. On May 6, 1895, Pilling & Scullen wrote plaintiffs as follows:

"Now gentlemen we want and shall get 6000 lb of Aus Lambs such as or very similar to what we had from you we are buying on 4 mos. (our note int. after 60 day) we want it in two 3000 lb shipment as we try to make our payments easy so that we be on time when due we certainly expect to pay our bills at maturity if we thought otherwise Mauger & Avery would be the last men we would buy from. We dont care to make statements of our exact standing to every one we buy from, we do not own the mill have had to put in some thousands of dollars in new machinery (Paid for) and we are easy in money matters to-day still we are not S. S. Fisher, no doubt you know of our various men we have bought from to any of them we refer you ask if we are prompt in our payments. Goodhere & Co. Albert Smith. Reifsnyder & Co. If you send the wool send 3000 lb at once as we have sold goods to deliver and must get them out soon."

On May 8, 1895, Pilling & Scullen wrote plaintiffs as follows: "Yours of yesterday received the writer notices you would make trade not only a debt but a debt of honor, be it so.

"Please send 3000 lb of the wool at once and we will send our note for 4 months interest added after 60 days. There is surely a great deal of wool sold in Cohoes on 4 months to what are considered good reliable people. Please ship so that we get the stock early as we have to deliver part of the goods in June."

The goods were sent on the 9th of May, and there is evidence that the plaintiffs relied on the statements contained in the letters and believed them to be true and acted upon them accordingly.

There is evidence which would authorize the finding that Pilling & Scullen, when they obtained these goods, were, in fact, largely insolvent, and that they knew or had good reason to believe that such was their condition. Their rent was past due to the extent of $1,000 and upwards, and they had no available means to meet it. They had drawn on the commission house or houses to which they were sending their goods for sale to the full extent that they would advance. They sold no goods themselves, except as they were sent to the commission houses. One of the firm testifies that all they drew between the first day of May and the date of the assignment was the sum of $1,600, and that this the partners used themselves for their own wages. Under the arrangement they had with the commission houses the advances were not equal to the actual cost price of manufacturing the goods. The arrangement was that advances should be made to the extent of two-thirds of the selling price. A reduction of the amount of advances by reason either of the selling price being lower or the rates of advance being decreased precipitated the failure of the firm.

They did not in terms say that they were solvent, but it might be found from the evidence that they designed that the plaintiffs should so believe. "One who uses words in a deceptive and double sense for the purpose of misleading the party with whom he contracts is bound by them in the sense in which he intended they should be understood." (*Johnson* v. *Hathorn*, 2 Abb. Ct. App. Dec. 468, and cases cited.)

They asked the plaintiffs to send the goods at once "as we have sold goods to deliver and must get them out soon." They had not, in fact, sold any goods. They only had an arrangement with a commission house to take the goods and sell them, and had been informed by an agent of the commission house that the goods could

be sold as soon as received. Filling orders for purchases actually obtained is one thing, and sending to a commission house with assurances of future sale is quite another. Whether the explanation given for this variation from the truth was sufficient to indicate no intent to deceive the plaintiffs was a question for the jury. It is readily apparent that the plaintiffs might be willing to sell, if the buyers were to realize the full price of the manufactured article as soon as it could be made, and might not be willing to sell, if the payment of the price depended on the hazards of a future sale on commission.

· " In the cases of *Meyer* v. *Amidon* (45 N. Y. 169) and *Oberlander* v. *Spiess* (Id. 175), the general rule was recognized that an action for fraudulent representations cannot be maintained without proof that the defendant believed, or had reason to believe, at the time when he made the representations, that they were false, and, consequently, that they were fraudulently made." (*Stitt* v. *Little*, 63 N. Y. 432. See, also, *Wakeman* v. *Dalley*, 51 id. 35; *Duffany* v. *Ferguson*, 66 id. 484; *Salisbury* v. *Howe*, 87 id. 135; Story on Sales, § 165.) The fact that one has reason to believe his statement to be false is evidence tending to prove the fraudulent intent, and that is a question of fact for the jury. (*Salisbury* v. *Howe, supra;* *Smith* v. *Acker*, 23 Wend. 658; *Francheris* v. *Henriques*, 24 How. Pr. 166.)

In the present case, under the circumstances appearing in the record before us, it was, I think, a matter for the jury to determine whether Pilling & Scullen, as an inducement to the purchase from plaintiffs, made representations as to their financial condition that were material and relied upon by the plaintiffs, and were false to the knowledge of Pilling & Scullen, or which they had reason to believe were false, and were made with a fraudulent intent.

The judgment should, therefore, be reversed.

All concurred.

Judgment reversed and a new trial granted, costs to abide the event.