### McNABB v. WHISSEL.

(Supreme Court, Appellate Division, Fourth Department.   October 14, 1902.)

**1. SALES—ACTION FOR PURCHASE PRICE—TITLE OF VENDOR.**

In an action for the price of lumber purchased by defendant from plaintiff, who had purchased it from a lumber company, the defense was that plaintiff never had title—First, because he purchased on a credit obtained by false representations; and, second (on evidence that the terms of the sale to plaintiff were for cash), that he had never paid therefor. *Held* that, the defendant not having shown that plaintiff took the lumber without the consent of the company, or that consent, if given, and waiver of cash payment made, was induced by fraudulent representations, plaintiff was entitled to judgment.

**2. APPEAL—NEW DEFENSES.**

On appeal by defendant he cannot set up defenses not pleaded or litigated below.

McLennan, J., dissenting.

Appeal from trial term, Erie county.

Action by Allen McNabb, trustee, against Catharine Whissel. From a judgment for plaintiff, defendant appeals.   Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Charles A. Pooley, for appellant.
Albert C. Spann, for respondent.

WILLIAMS, J.   The judgment should be affirmed, with costs. The action was to recover the purchase price of a car load of lumber purchased by the defendant from the plaintiff's assignor.   The defense was, in brief, that the vendor had no title to the lumber when the sale was made, and that the vendee had surrendered the same to the real owner.   The plaintiff's assignor purchased the lumber from the Eastern Lumber Company.   The theory of the defense when the answer was served was that the sale by the lumber company to the plaintiff's assignor was upon credit, and such credit was induced by fraudulent representations.   Upon the trial, however, it appeared that the sale was for cash, but for some reason, not explained, cash was not paid upon the delivery of the lumber to the purchaser, and then the defense was sought to be maintained upon the ground that title did not pass to the purchaser because of the nonpayment of such purchase price.   It was claimed this defense was not permissible under the answer, and the answer was not amended to conform to the facts as they appeared upon the trial.   Upon this appeal it is claimed that the payment of the purchase price at the time the lumber was delivered was waived by the lumber company, and that such waiver was induced by the fraudulent representations, and therefore the waiver became ineffectual to pass title without payment of the purchase price. The trial court held the sale was for cash; that there were false representations, but that they were not important upon a sale for cash; that the defense sought to be sustained upon the trial that the title did not pass because the purchase price was not paid was not within the allegations of the answer, and could not, therefore, be upheld.

The defense sought to be established upon this appeal that the waiver of payment at the time of the delivery of the property was induced by the fraudulent representations cannot be sustained, because there was no proof made upon the trial that the waiver was so induced. This defense was not alleged in the answer, and was not litigated upon the trial. It did not appear how the delivery of the lumber without the payment of the purchase price happened to be made. The president of the lumber company, who made the sale, testified that in selling the lumber he relied upon the false representations; but he did not testify that he relied upon those representations in consenting to the delivery of the lumber without the payment of the purchase price. Indeed, he did not say whether he did consent at all. The sale was for cash, and the lumber company had the right to insist upon such payment as a condition of delivering the lumber. The lumber was, however, delivered without such payment being made. The defendant might have shown that the taking of the lumber was without the consent of the lumber company, or that such consent, if given, and waiver of cash payment made, was induced by the fraudulent representations. Proof was not made of either of these facts, and, in the absence of such proof, no defense was made out, whether alleged in the answer or not. The case was therefore properly disposed of by the trial court, and the judgment and order should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except McLENNAN, J., who dissents in an opinion, and ADAMS, P. J., who did not sit.

McLENNAN, J. (dissenting). The action was commenced on the 16th day of June, 1899, to recover the purchase price of a car load of lumber sold to the defendant by Francis J. Underhill, the plaintiff's assignor. The defense interposed by the answer was that:

"One Francis J. Underhill, doing business under the name and style of F. J. Underhill & Co., as in the complaint mentioned, falsely and fraudulently, for the purpose of obtaining credit, stated and represented to the Eastern Lumber Company, a foreign corporation organized under the laws of the state of Illinois, and doing business at Tonawanda, N. Y., that he was in good business credit, solvent, and able to pay his debts in full; and that said corporation, relying upon the said statement, and believing the same to be true, and believing said Underhill to be solvent, was induced thereby to deliver the property described in the complaint to him upon credit. That said Underhill obtained the same with the preconceived design and intent not to pay therefor. That at the time aforesaid, and when said Underhill obtained said goods, he was insolvent, and knew himself to be so, and concealed such insolvency from the said Eastern Lumber Company, for the purpose of defrauding it, and obtained said goods without intending to pay therefor. That after said Underhill obtained said goods, he sold the same to this answering defendant, as in the complaint alleged, and that thereafter the said Eastern Lumber Company rescinded said sale, and reclaimed said goods, and this answering defendant was compelled to and did deliver and surrender up the same to the said Eastern Lumber Company, and is not indebted unto the plaintiff in any sum whatsoever therefor."

The facts are hardly in dispute. Francis J. Underhill, plaintiff's assignor, was engaged in the lumber business in the city of Buffalo until about December 2, 1898. He had no lumber yard, but had an office in that city, and it was his practice to contract for the purchase

of lumber, then sell it, and cause it to be delivered directly to his vendee by the person or corporation from whom he purchased. For a number of years Underhill had purchased lumber from the Eastern Lumber Company in this manner, and, so far as appears, he had never purchased any lumber from the Eastern Lumber Company in any other manner. He had theretofore paid for the lumber so purchased promptly, and the usual terms of sale were cash. In July, 1898, however, Underhill purchased a car load of lumber from the Eastern Lumber Company for cash, but the terms of the agreement were subsequently waived; the lumber was delivered, and a three-months note accepted, which note was thereafter duly paid. On the 1st day of December, 1898, during Underhill's absence from the city, his agent, one McBride, having theretofore made a contract for the sale of a car load of lumber to the defendant in this action, purchased the lumber in question from the Eastern Lumber Company. The negotiations were conducted between Mr. Darr, the president of the Eastern Lumber Company, and McBride, the agent of Underhill, plaintiff's assignor. McBride represented that Underhill was financially responsible; and Darr, the president of the lumber company, testified that in selling the lumber he relied upon the statements made by McBride as to the financial responsibility of Underhill, and, in substance, that by means of such representations he (Darr) was induced to and did make the contract of sale for the lumber in question, which provided for the payment of cash for the lumber upon delivery. The lumber in question was loaded upon a car in the yard of the Eastern Lumber Company on the 2d day of December, and on that day Underhill obtained possession of it,—just how does not appear, but we must assume with the consent of the Eastern Lumber Company,—and procured the car to be taken from the yard, and delivered to the defendant, without paying the purchase price therefor. So far as appears, no negotiation or conversation was had between any representative of the Eastern Lumber Company and Underhill, or his agent, in respect to the lumber, after the bargain was made for its sale on December 1st. No express waiver of the payment of the purchase price was shown, and nothing appears in respect to it except that the lumber was transported from the yard of the Eastern Lumber Company and delivered into the possession of the defendant. Underhill suspended business on December 2, 1898, the very day upon which the lumber in question was taken from the yard of the Eastern Lumber Company, and on the 23d day of that month called a meeting of his creditors, sending to them a statement of his financial condition, which showed that he was hopelessly insolvent, and had been for some time previous; and on the 27th day of December, 1898, he made a general assignment of his property to this plaintiff for the benefit of his creditors. Upon learning these facts, the Eastern Lumber Company immediately served notice upon the plaintiff and his assignor rescinding the sale, and demanded the lumber sold by it from the defendant. The defendant had paid no part of the purchase price, made no claim that she owned the lumber, and, being satisfied that Underhill had never acquired title to the same, but had obtained it by means of false and fraudulent representa-

tions, acceded to the demand of the Eastern Lumber Company, and surrendered the car load of lumber to it. As already stated, this action is brought by the plaintiff, as Underhill's assignee, to recover, for the benefit of Underhill's creditors, from the defendant, the purchase price of said lumber, which was obtained from the Eastern Lumber Company under the circumstances adverted to, he not having paid a cent therefor, amounting to the sum of $368.08, with interest, for which amount judgment was rendered in favor of the plaintiff. The evidence conclusively establishes, and the fact was found so to be by the learned trial court, that the representations made to the Eastern Lumber Company by McBride as to the financial responsibility of Underhill were false, and that at the time of the purchase Underhill was insolvent, which fact was unknown to the Eastern Lumber Company. The testimony of Mr. Darr, the president of the Eastern Lumber Company, is uncontradicted that he relied upon such representations in making the contract for the sale of the lumber. The learned trial court seems, however, to have concluded, as appears by his opinion, that because the contract for the sale of the lumber to Underhill was for cash, it cannot be said that credit was obtained by means of the false and fraudulent representations alleged in the defendant's answer. We fail to discover anything inconsistent in the defendant's contention. The construction of the terms of a sale for cash is that upon the delivery of the property contracted for the purchase price will be paid to the vendor by the vendee. If this is done, of course no question as to the responsibility of the vendee can arise, and any representations which he may have made as to his financial condition become entirely immaterial, and it is unimportant whether they are true or false; but if a contract of sale be for cash, and in such a case the contract becomes one upon credit, and if such credit was induced by false and fraudulent representations, which were relied upon by the vendor, it quite as effectually prevents the passing of title as though the original sale had been upon credit. In the case at bar the plaintiff's assignor obtained possession of the lumber in question by means of the representations which he made, and the court has found, and the evidence clearly shows, that such representations were false, and were believed and relied upon by the Eastern Lumber Company, not necessarily inducing it to make the original contract, but inducing it to waive the terms of the original contract, and to permit the vendee, Underhill, to obtain possession of the lumber without paying the purchase price thereof. Delivery is an essential part of the performance by the vendor of a contract for the sale of chattels, and, if induced to make delivery by means of false representations, the vendee can acquire no rights by virtue of such act, any more than he could acquire rights under the contract originally made if induced by fraud. We think it ought not to be held that the defendant failed to establish her defense simply because she failed to prove in express terms that the Eastern Lumber Company waived the payment of the purchase price of the lumber because of the false and fraudulent representations of Underhill and his agent, when it conclusively appears that the contract of sale, which includes delivery, was induced by such fraud, and when it is apparent that,

except for such fraudulent representations, the Eastern Lumber Company would not have parted with the possession of the lumber. It is entirely immaterial whether the contract made in the first instance was induced by fraud, or whether the vendor waived or surrendered some right incident thereto because of such fraud. In either event, the vendee can acquire no rights by reason of such act or waiver if induced by his fraud. The Eastern Lumber Company, assuming that the car load of lumber was taken by Underhill from its yard with its consent, had the right to say: "It is true the contract as made provides that the lumber shall be paid for upon delivery, but Underhill has represented himself to be financially responsible. We rely upon and believe such representations to be true, and therefore will permit him to take the lumber into his possession, waiving so much of the contract of sale as provides that cash shall be paid upon delivery." I am of the opinion that in interpreting the meaning of the evidence in this case we ought not to indulge in the refined distinction that, because the president of the Eastern Lumber Company did not testify in terms that he waived the payment of the "cash" upon the delivery of the lumber because of the representations of the plaintiff's assignor, the plaintiff is entitled to recover. Mr. Darr testified, and it is uncontradicted by even the slightest circumstance in the case, that the contract or transaction which he had with Underhill was induced by the representations which the learned trial court has found were false. Delivery of the lumber was an essential part of such transaction, and necessary to its consummation. The only interpretation of which the entire evidence is susceptible is that the plaintiff's assignor obtained possession of the lumber from the Eastern Lumber Company by means of false and fraudulent representations made by Underhill, which were relied upon by said company. An affirmance of the judgment appealed from enables the plaintiff to obtain something for nothing, enables him to take advantage of a gross fraud perpetrated by the assignor, and we think there is no rule of law applicable to the facts of this case, as disclosed by the evidence, which makes such a result necessary.

But, independent of the foregoing considerations, it appears that at the time Underhill's agent, McBride, represented his principal to be financially responsible for a large sum, the fact was Underhill was utterly insolvent, and must have known his condition financially to be radically different from the representations he was permitting or procuring his agent to declare. With this knowledge, it was a fraud in itself to permit his agent to purchase or procure the delivery of goods upon his credit without disclosing to the vendor the true state of his finances. A debtor in failing circumstances in obtaining goods upon credit is required to display perfect frankness in acquainting his vendor with his true financial condition, and his failure so to do is evidence of a fraudulent intent upon his part. Grant v. Walsh, 145 N. Y. 502, 40 N. E. 209, 45 Am. St. Rep. 626; Mauger v. Slavin, 11 App. Div. 483, 42 N. Y. Supp. 331.

It is suggested that the testimony given on the trial as to the fraudulent representations of Underhil' were not within the allegations of the defendant's answer, and therefore not available to her as a de-

fense herein.   A careful perusal of the testimony bearing upon that feature of the case fails to disclose a single objection to the testimony of Mr. Darr as to those representations, his belief in them and reliance thereupon.   If the plaintiff desired to raise any objection to such testimony upon the ground that it was not within the allegations of the answer, he should have done so at the time the proof was offered, or he should have later made a motion to strike the same from the record.   His failure to interpose such objection at the trial precludes its being asserted for the first time upon appeal.   Brady v. Nally, 151 N. Y. 258, 45 N. E. 547, and cases cited.   Had the plaintiff interposed the objection that the proof was at variance with the defense alleged in the answer, an opportunity would have been given the defendant to make a motion to amend her pleading to conform to the proofs at a time when its allowance would have worked no injury to the plaintiff.   Motions of this character commend themselves to the courts, and we do not discover anything in the record before us which indicates that this defendant would not have been able to present a meritorious application to amend, had there been any reason therefor.   Courts have expressly declared that greater liberality will be exercised in allowing a defendant to amend his answer than in permitting the plaintiff to amend his complaint.   1 Enc. Pl. & Prac. p. 518.   A multitude of authorities declare the salutary rule that statutes of amendment are remedial, and must be construed and applied liberally in favor of the privilege of amending.   Upon this proposition there are no dissenting authorities.   1 Enc. Pl. & Prac. p. 517, and New York cases cited.

Entertaining these views, I am compelled to dissent from the prevailing opinion of my brethren, and to vote for the reversal of the judgment and order appealed from, and the granting of a new trial, with costs to the appellant to abide the event.