JONATHAN JAMES, JR., v. ALBERT HODSDEN.

*General Assumpsit. Evidence. Fraudulent Representations by Vendor. Damages.*

General assumpsit lies to recover the consideration paid for the purchase of property, when the sale is avoided for fraud, or when the consideration entirely fails.

A witness who had knowledge of the mechanism and working of knitting machines, and was familiar with the operation of a needle called the latch-needle, but who had no experience in the use of the spring-needle, nor knowledge of its operation, was permitted to show the facility and perfection of operation of the latch-needle to the jury, and testify to its merits, and to give his opinion why he thought its use could not be superceded by the spring-needle, with his reasons therefor. *Held,* no error.

The plaintiff was permitted to testify as to his examinations at the Patent Office for evidence of the granting of a patent, or of an application therefor, and that nothing pertaining thereto could be found, except a certain paper which he produced. *Held,* no error.

If the vendor's fraudulent representations constitute *one of the inducements* to the purchase, it is sufficient to avoid the sale.

In assumpsit to recover back the consideration paid for an interest in a patent-right fraudulently sold the plaintiff by the defendant, it appeared that the plaintiff gave the defendant two five hundred dollar negotiable notes in part payment of the purchase money, containing a statement that they were given for a patent-right, and that the defendant soon after disposed of one of said notes in payment of a note outstanding against himself, and that before suit, the plaintiff paid said note with a horse which he bought and paid for by his note, and with his two other notes signed by sureties; that before suit the plaintiff took up his other five hundred dollar note, by executing to the defendant his five one hundred dollar negotiable notes, containing the same statement; that soon after, the defendant sold one of said last-named notes to M., which the plaintiff paid by executing a new note therefor not containing said statement, which was negotiated before maturity, and was not paid. It also appeared that the defendant sold three more of said $100 notes, which the plaintiff took up by compromising with the holders, paying less than their face. At the time suit was brought, the plaintiff had paid no money towards his purchase, and none of the notes given therefor had become due. *Held,* that the plaintiff could recover the amount of said five hundred dollar notes, and of the $100 note sold to M., and what he had paid to compromise with the holders of the other three notes.

GENERAL ASSUMPSIT to recover back the consideration paid for an interest in an invention or right to procure a patent for an improved knitting-machine needle. Plea, the general issue; trial by jury and verdict for the plaintiff, February term, 1874, Orleans county, PECK, J., presiding. The writ was dated November 22, 1871.

The plaintiff's evidence tended to show, that on the 27th of August, 1871, the plaintiff and defendant joined on equal terms in purchasing the invention in question of one Timothy J. House, who claimed to be the inventor thereof; that in the negotiations to bring about the trade, it was represented to him by said House that he had forwarded a model of his invention to certain patent solicitors, who were named, for the purpose of procuring a patent thereon, and that he agreed to get a patent on the subject-matters of the sale to plaintiff and Hodsden ; that in making said trade, it was represented to him by said House, and also by the defendant, that the needle in question would come into general use, and supplant or take the place of both the latch-needle, so called, and the spring-needle, then in common use in knitting-machines. The plaintiff claimed, and his evidence tended to prove, that in making this trade, defendant and said House and Charles House, acted in collusion to defraud the plaintiff, and that the defendant's sale to the plaintiff, hereafter mentioned, was made in pursuance of part of the original design of said Timothy and Charles and the defendant, to defraud the plaintiff. His evidence further tended to show, that after their joint purchase from said Timothy, and on the 6th of September, 1871, the plaintiff purchased of the defendant his half interest in the invention ; that he was induced to make this trade, which was the purchase in question, by the defendant's representation that the needle in question would work, and would take the place of both the latch and the spring-needles then in use ; and by other false and fraudulent representations which defendant knew to be false at the time he made them.   It appeared from the evidence on both sides, that both the latch-needle and the spring-needle, and by some witnesses the English spring-needle, were the kinds generally used in knitting-machines,.and samples of both these kinds of needles were produced on trial.   The plaintiff's evidence further tended to show, that he was also induced to make the trade in question by the false and fraudulent representations of the said Charles, and by certain deceitful and fraudulent contrivances and transactions between said Charles and defendant, practiced upon the plaintiff to bring about the trade.

The defendant seasonably objected that the plaintiff could not recover in this form of action, without setting out in his declaration the fraud complained of; but the court ruled that if the plaintiff proved such fraud as would sustain a special action on the case for fraud, and also proved that the subject-matter of the sale was at the time of the sale entirely worthless, the form of action being general assumpsit, was not an objection to recovering back the price he had already paid—reserving the question as to whether and how far the notes hereafter mentioned would operate as payments, and if so, whether payments made in notes pending the suit, would be recoverable in this action. This was at the commencement of the trial.

The plaintiff introduced one Alonzo Wood as a witness, who testified that he was the owner of a hand knitting-machine, which he produced in court, and which he exhibited to the jury, and operated it in knitting, and explained it to the jury, and testified that he had seen the needle in question, it having been shown him by the plaintiff; that he was some familiar with the working of the latch-needle, which he had in the machine, but had never seen any one work, or attempt to work, the spring-needle, cnly by crocheting with it a little; that he never had any experience with any other machine than the one he had, and had never seen any other kind, but had heard of them; and that he knew nothing about the operation of any needle except the one in his machine. The witness was shown samples of the common spring-needles in use, which had been identified as such by the plaintiff on cross-examination, and he could not tell what they were—said they looked some like knitting-machine needles. At this point the defendant objected that the witness was not sufficiently experienced in the business to be qualified to express an opinion of a different kind of needle from that he had been accustomed to, as to whether it was a valuable invention or not. The plaintiff then claimed that as it was in evidence that the defendant and the Houses represented to the plaintiff that the needle in question would take the place of the latch-needle used in knitting-machines, it was competent to ask the witness, who was familiar with the use of the latch-needle,

17

whether the needle in question could take the place of the latch-needle, and if not, why it would not. The court admitted the evidence thus offered, against the defendant's exception, and permitted the witness to express his opinion on the question proposed as to the needle in question, and the witness explained to the jury in connection with knitting with his machine, why, in his opinion, the needle in question could not take the place of the latch-needle.

The plaintiff was allowed to testify that he went to the Patent Office at Washington, on the 6th of November, 1871, and made inquiry for the application for the invention in question, and that on search in that office by some clerks whom he did not know, he could find only a certain paper which he produced, and which was admitted in evidence. Said paper was an unstamped blank application and specification for a patent, addressed to the Commissioner of Patents, with the certificate of oath filled up and signed by Samuel Sumner, Justice of the Peace, an attorney of the county court; and the specification was signed by the said Timothy J. House, and his signature witnessed by two witnesses. To the admission of this evidence, the defendant excepted. Previous to this testimony as to the plaintiff's going to the Patent Office, he testified, among other things, that when he and the defendant bought out the said Timothy, the latter agreed with them that he would get a patent on the subject-matter of the sale to them.

The defendant requested the court to charge the jury, that the plaintiff must, to maintain this action, show an entire lack of value in the invention sold; and the court so charged. The defendant made a specific request to the court to charge, setting forth therein what he claimed the jury should find in order to give a ground of recovery on account of false representations, and the court charged as requested, and after charging in reference to the alleged false representations of the defendant, in accordance with the defendant's request, added, in reference to the necessity that the purchaser should rely on false representations, that it was not necessary that they should find that the plaintiff relied solely on the representations, but it was sufficient if they found the representations were so far relied on by the plaintiff as to constitute

one of the inducements of the trade in question. To this the defendant excepted ; and in taking the exception, suggested to the court that that portion of the charge be so modified that the jury be instructed that, to entitle the plaintiff to recover, they should find that these representations were so far relied on by the plaintiff as to constitute one of the inducements of the trade, and one without which the plaintiff would not have made the trade. The court declined to so modify the charge ; to which the defendant excepted.

By agreement of counsel, the court did not submit to the jury to determine the amount of damages ; and counsel agreed that if the jury found a verdict for the plaintiff, the court might assess the damages ; and if any facts in relation to the negotiation and payment and compromise of any of the notes were in dispute, that the court might find the facts from the evidence in the case, and assess the damages after verdict    It was conceded that at the time of bringing this suit, no money had been paid towards the purchase money in question, and no note given therefor had become due.    It was also conceded that by the terms of the trade, the sum agreed upon was fifteen hundred dollars, and that for the payment of the same, the plaintiff gave the defendant three notes of five hundred dollars each; one of which was a bank note in usual form not negotiable, payable to the Orleans County National Bank, at said bank, in ninety days from date ; the others stated that they were given for a patent-right, and waived all equities and set-offs on account of the same, and were negotiable. The bank note was discounted in a short time by the defendant's procurement, and no question was made of the plaintiff's right to recover the amount paid thereon.    The defendant insisted that the plaintiff could not recover for any payment on either of the other notes.    It was conceded that within a short time after receiving said notes, the defendant disposed of one of them to the said Timothy, in exchange for a note of his own, given to him for the purchase money of the defendant's interest in said invention with the plaintiff as aforesaid, which note so taken up was in the same form as to statement of having been given for a patent-right, as the notes in question.    It was further conceded that on the 19th of September,

1871, said House applied to plaintiff with said $500 note, to assist him in purchasing a horse; that at the request of said House the plaintiff purchased a horse of one Farman, for which he gave his note for $250, made negotiable and in common form; that on the same day he gave this horse, together with a note for $200 with surety, and one for $50 without surety, to said House, and took up said $500 note. The notes so given by the plaintiff were negotiable, and without any statement of having been given for a patent-right. This was done before the commencement of this suit. It further appeared, that since the commencement of this suit, the plaintiff had paid the notes so given to said House. It was also conceded that not long after the sale in question, the plaintiff, at the defendant's request, gave five one hundred dollar notes to the defendant, in exchange for the other five hundred dollar note in question; that said one hundred dollar notes were made to bear the same date, were payable in the same time, and as to statement of having been given for patent-right, were in the same form as the one for which they were given in exchange, and were negotiable.

At the time of the trade in question, the plaintiff gave the defendant what the parties called a bill of sale of personal property, to secure the payment of said two notes; and at the time of the exchange of the notes, the bill of sale was changed so as to describe the notes so given in exchange. It appeared that defendant sold one of the one hundred dollar notes to one Miller, soon after the exchange, and that the plaintiff gave said Miller a new note therefor, for the same amount, and payable at the same time, but negotiable in common form, and without statement of having been given for a patent-right; that it was negotiated before maturity, and was still held by the party to whom it was negotiated. The plaintiff testified that this exchange with Miller was made at the defendant's request, which the defendant denied. It further appeared that the defendant sold three of said one hundred dollar notes to different parties; that before the bringing of this suit, the plaintiff received notice of such sale, but had not paid them; that since the suit was brought, and after the notes became due, they were by their holders presented to the plaintiff for payment, which he resisted on account of their having been

James v. Hodsden.

given for a patent-right, with notice of such fact upon their face, and because there was an entire failure of the consideration for which they were given; and that the plaintiff compromised with the holders of said notes, by paying fifty dollars each on two of them, and thirty dollars on the other. The plaintiff claimed to recover the amount actually paid to compromise said notes, and in all, the sum of $1387.21, as computed by the counsel. It appeared that the other of the $100 notes was still held by defendant.

Before the case was submitted to the jury, the defendant's counsel contended that if the plaintiff recovered, it should be for the amount of the bank note only, and interest; and on hearing after verdict, on the question of damages, conceded that the ·plaintiff should recover the amount of the bank note and interest. The court rendered judgment for the plaintiff to recover the amount of said bank note, the amount of the note which the defendant disposed of to the said House, and the amount of the $100 note sold to Miller, making the sum of $1252.91 in all; and allowed the plaintiff nothing for payments made to compromise with the holders of the other three $100 notes sold by the defendant; to the disallowance of which the plaintiff excepted; and the defendant excepted to the allowance of all but the bank note.

*Crane* and *Edwards & Dickerman*, for the plaintiff.

The plaintiff can recover in this form of action without setting out in his declaration the fraud complained of. *Loomis* v. *Wainright*, 21 Vt. 521; *Gilman* v. *Peck*, 11 Vt. 516; *Morris ex. dem. Ludlow* v. *Gill*, 1 D. Chip. 49; *Burnap* v. *Partridge*, 3 Vt. 144; *Phelps, Dodge & Co.* v. *Conant*, 30 Vt. 277; *Dana* v. *Kemble*, 17 Pick. 545; *Edmeads et als.* v. *Newman*, 1 B. & C. 418; *Miller* v. *Miller*, 7 Pick. 133; *Pickard* v. *Bankes*, 13 East. 20; *Spratt* v. *Hobhouse*, 4 Bing. 173; *Longchamp* v. *Kenney*, Doug. 137; *Wier* v. *Church*, N. Chip. 95; *Larabee* v. *Ovit*, 4 Vt. 45; *Conn. & Pass. R. R. Co.* v. *Newell*, 31 Vt. 364; *Lapham* v. *Barnes, et al.* 2 Vt. 213; *Houston* v. *Fellows*, 27 Vt. 634; Sedgw. Dam. 318; *Hulett* v. *Soullard*, 26 Vt. 295.

The testimony of Mr. Wood was admissible. *Goodtittle* v. *Braham*, 4 T. R. 497; *Mason* v. *Fuller*, 45 Vt. 29; 1 Greenl.

Ev. § 440, n. 2; *Note to Carter* v. *Boehm*, 1 Smith Lead. Cas. *627.

The testimony of the plaintiff, as to going to the Patent Office and procuring the paper there, which is referred to, taken in connection with the previous testimony, was admissible.   2 Phil. Ev. 440, 452, n. 330.

The charge of the court was correct in relation to the false representations of the defendant, and the plaintiff's reliance upon them.   1 Story Eq. Jur. §§ 195, 203.

The amount of the notes paid by plaintiff, including the amounts paid to compromise the three notes and the notes now outstanding against him, ought to be allowed to the plaintiff.   The plaintiff was in the exercise of sound discretion in settling said notes. Had he resisted them, successfully even, the expense would, ordinarily, far exceed the amount he paid.   As the defendant's fraudulent conduct brought the plaintiff to this extremity, and as the defendant in furtherance of his fraud sold the notes and received the money on them, he ought to be regarded as holding it for the plaintiff to the extent the plaintiff has been damnified.   The plaintiff was no more bound to stand suit, or wait till he was sued, than is a surety—and a surety is not bound to do either.   Sedgw. Dam. 326, 327.   A judgment between these parties and the plaintiff, would determine nothing as between the plaintiff and defendant.   Per REDFIELD, J., in *Lincoln* v. *Blanchard*, 17 Vt. 469.

*H. C. Wilson* and *Benton, Hill & Cross*, for the defendant.

In order to a recovery in this case, the declaration should set out the fraud complained of.   *Shepherd* v. *Worthen*, 1 Aik. 188.

The witness Wood was improperly allowed to give his opinion as an expert.   *Dole* v. *Johnson*, 50 N. H. 452.

There was also error in permitting the plaintiff to testify to his explorations in the patent office.

The charge as to plaintiff's reliance on defendant's representations, should have been modified as suggested when the exceptions were taken.   If the plaintiff did not rely so much on the representations in making the trade, that he would not have made the trade without them, they could not be the ground of recovery in this action.

This action is assumpsit to recover back the purchase money. To maintain it, plaintiff must show actual payment or its equivalent. *Burnap* v. *Partridge*, 3 Vt. 144; *Willey* v. *Green*, 2 N. H. 333; *Floyd* v. *Day*, 3 Mass. 403; *Beardsley* v. *Root*, 11 Johns. 464. There is an old case, *Dean* v. *Mason*, 4 Conn. 428, which holds that giving a note which had not been paid, would not sustain this action for money had and received. That point was however not much considered, and we do not claim that the case has much weight as an authority. This particular question seems to have been but little discussed in recent cases. To give the effect of payment to the delivery of the notes, they must be negotiable. A bond for the amount does not have that effect. *Cummings et al.* v. *Hackley et al.* 8 Johns. 202; *Taylor* v. *Higgins*, 3 East. 169. There is a difference between such a payment by note as would merge a pre-existing debt, and one that would be the foundation of an action to recover it back. But even in the former case the notes must be negotiable. 2 Parsons Cont. 628, n. In this case, although the notes were negotiable, they are affected by our statute, which takes from them all the incidents of negotiable paper so far as this question is concerned; for they are made "subject to all the defences to which they would be subject if owned by the original promisee." Laws of 1870, No. 68, § 2.

A claim in assumpsit for money paid defendant, cannot be supported by proof of a payment to House, even though he was a confederate in that transaction. The sale of the Miller note did not give a right of recovery. From the facts shown, it cannot be collected; for Miller had notice of the consideration for which it was given, and was fairly put upon inquiry to learn whether the patent was valuable or not. Being so put upon inquiry, he is not only affected with notice of what he might have then learned on such inquiry, but of what has since transpired. *Gould* v. *Stevens*, 43 Vt. 125. The plaintiff's compromise of the three small notes, was a voluntary payment which he cannot recover here.

The opinion of the court was delivered by

REDFIELD, J. This action is to recover the consideration paid for an interest in a certain invention or right to procure a patent

for an improved knitting-needle. The theory of the case is, that the sale was induced by fraud ; that the property is worthless; and that the consideration has entirely failed.

I. There seems no doubt that general assumpsit lies to recover the consideration paid for the purchase of property, where the sale is avoided for fraud, or where the consideration entirely fails. *Loomis* v. *Wainwright*, 21 Vt. 520 ; *C. & P. R. R. Co.* v. *Newell*, 31 Vt. 364. Chit. Cont. 689, and cases there cited.

II. The witness Wood was familiar with the operation of the latch-needle in the knitting-machine, and exhibited the working of his machine to the jury, and by that means explained why, in his opinion, the spring-needle could not take the place of the latch-needle. The witness had no experience in the use of the spring-needle, or knowledge of its operation ; but the court permitted the witness to show the facility and perfection of the operation of the latch-needle, as a reason for his opinion that it could not be supplanted by the new invention. That opinion seems to have been founded on the great merits of the one, rather than the demerits of the other. The witness did not possess any practical knowledge of the spring-needle, and could not strictly compare its working with other needles. But he had knowledge of the mechanism and working of the knitting-machine, and did show its working to the jury ; and we think it not error that he was permitted to testify to the excellence of the latch-needle, and that in his opinion it could not be supplanted by the other kind ; its weight was a matter for the jury.

III. The plaintiff was permitted to testify as to his examination at the Patent Office for evidence of the granting of a patent, or of the application for the same ; and that nothing pertaining thereto could be found except an anomalous paper which he produced in court. We think that this evidence was admissible, though of less force than that of an officer in charge of the office. It was competent to prove that no application had been made for a patent to secure the right of this invention of pretended value. The blank application, with the affidavit of Timothy J. House thereto attached, " that he verily believes himself to be the original and first inventor of the invention herein described," with no specifi-

cation or intimation in the paper that the "invention" pertained to a knitting-needle, had a tendency to show that defendant regarded the pretended invention as rather spurious than real. And in reference to the acts and declarations tending to show conspiracy and fraud, we think the evidence admissible.

IV. The charge of the court, "that it was not necessary that they should find that the plaintiff relied solely on the representations, but it was sufficient if they found the representations were so far relied on by the plaintiff as to constitute one of the inducements of the trade in question," we think sound and reasonable. Under the charge, the jury must have found that the plaintiff was deceived and defrauded; that he was, in fact, cajoled into a purchase of a patent-right interest of no value, and giving his notes for a large sum, by the false assertions and practices of the defendant and his conspirators. It is often said in the cases, that the false representations must have been such that without them the trade would not have been made. But it is never possible for any man, in the aggregate of inducements that effected the sale, to determine whether the result would have been attained with some of the inducements abated; nor should the guilty party seeking the benefit of a sale fraudulent in fact, and induced, in a measure, by his fraud and falsehood, be permitted to allege in excuse that the innocent party might have made the purchase if he had practiced less deceit, and his lies had been less flagrant. If he resorts to unlawful means and accomplishes a fraudulent purpose, the law will not stop to measure the force of such inducements. It is enough that the party was deceived and cheated, and the defendant's falsehood and fraudulent practices contributed to that end. "The misrepresentation must be in something material, in which the party relies and puts confidence, and he is misled and cheated." 1 Story Eq. 197, 203. If a party, induced by the several false and fraudulent declarations of two persons, different in time and character, purchases worthless property, it would not do to say that because the trade might not have been made if only one falsehood had been uttered, and the purchase not *wholly* induced by either, therefore he is without remedy or redress. If a fraud

is accomplished, and the unlawful acts of the defendant contributed thereto, he is answerable. The fraudulent acts of the defendant must, indeed, have worked an injury, or there could be no damages and no recovery. But if the wrong has been done, and the defendant is party to its infliction, the court will not apportion the penalties of guilt among offenders, nor divide spoil among highwaymen.

V.   As to the damages which the plaintiff may lawfully recover, we think the court did not err in allowing the $500 note negotiated to Timothy J. House, and afterwards paid by the plaintiff by the purchase of a horse for said House and giving a new note with surety to said House, which was negotiable and contained no notice on its face that it was given for a patent; and the $100 note negotiated to Miller was properly allowed, for the same reason.   There is a natural inference that the plaintiff relied on the same state of facts which induced the trade, when he took up the notes given for the purchase with other and smaller notes, making them negotiable, and was thus innocently placed in the condition from which he could not escape.   And we think that what he paid by way of compromise, to get up the three $100 notes which were negotiated and sued, should be allowed to the plaintiff.   It will be presumed, in the absence of any proof against it, that he acted in good faith, and took the cheapest and most prudent course to get rid of the notes.   The notes had been negotiated ; and assuming that he might have successfully defended the notes in the hands of the endorsee, he was not under any legal obligation to follow the notes into all the courts where they might be prosecuted, and spend his time and fortune in the defence.   The judgment, therefore, of the county court, is reversed, and the sums paid in compromise for three $100 notes, added to the damages for the plaintiff, and judgment for the plaintiff for the whole sum being $1387.21, with interest from the time computed in the county court and stated in the exceptions.