BURNHAM, HANNA, MUNGER & COMPANY, Appellants, v. T. J. ELLMORE, Respondent.

St. Louis Court of Appeals, May 12, 1896.

1. **Replevin:** EVIDENCE IN CONTRADICTION OF PLEADING. When the answer in an action of replevin admits that the goods replevied had been purchased from the plaintiff by the assignor of the defendant, it is erroneous to allow the defendant to establish the contrary by his evidence.

2. **Practice, Appellate:** NONPREJUDICIAL ERROR. A judgment will not be reversed on appeal for nonprejudicial error.

3. **Sales:** RESCISSION FOR FALSE REPRESENTATION. In order that the seller of goods should be entitled to rescind the sale for a false representation by the purchaser, it is not essential that he should have relied solely on the representation in making the sale; it is sufficient to avoid the contract, if the false representation was one of the inducements to the making of it.

4. ———: ———: NECESSITY FOR DEMAND. When a sale is invalid owing to false representations made by the vendee, an action of replevin for the property sold may be maintained by the vendor against one who stands in the shoes of the vendee without any prior demand for the property.

*Appeal from the Barry Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED AND REMANDED.

*Pepper & Steele, Thos. M. Allen,* and *Cloud & Davies* for appellants.

*Joseph Cravens, W. A. Wear,* and *George & Landis* for respondent.

BIGGS, J.—In 1894 W. F. and A. L. Galloway and H. F. Short were engaged in the mercantile business under the firm name of Galloway and Company. For the purpose of obtaining credit from the plaintiffs, who are wholesale merchants, Galloway and Company on the fifth day of June, 1894, made out and delivered to plaintiffs a statement of their pecuniary condition, in which the assets of the firm and the individual property of the members were stated and valued at $10,000. Subsequently, during the months of November and December, the plaintiffs sold the firm goods of the value of $1,200. On the seventh day of January, 1895, Galloway and Company made a general assignment to the defendant for the benefit of creditors, and the property of the firm, including the stock of goods remaining unsold, was delivered to him. On the ninth day of January following the plaintiffs instituted this action of replevin, and goods of the value of $500 were taken from the assignee, the plaintiffs claiming that they were a portion of the goods which they had sold to Galloway and Company. The foundation of the plaintiff's right to maintain the suit is that the goods were sold, and the credit extended, on the faith of the statement made by Galloway and Company, which it is claimed was false and misleading in several material matters.

The answer admits that the goods replevied were a portion of the goods sold by plaintiffs to Galloway and Company, but the defendant denied that the plaintiffs were entitled to their possession, and he

asked that they be returned to him. The answer contained the additional statement that, after the goods were replevied, the plaintiffs presented their claim to the defendant for allowance, but it is not stated for what amount an allowance was asked, nor that it was allowed.

The jury found the issues for the defendant and assessed the value of the goods at $500, which was followed by the usual judgment. The plaintiffs have appealed.

The plaintiffs introduced W. F. Galloway as a witness. After examining him as to his individual property, and its value at the time the financial statement was made out, the attorney for the plaintiffs asked him if he had not previously testified in a deposition that eighty acres of land near the town of Jenkins and some lots in the town constitued all the real estate owned by him in the year 1894. On objection of defendant the circuit court refused to allow the question to be answered. The ground of the objection was that the plaintiffs could not impeach their own witness. Putting aside all other questions the plaintiffs were not prejudiced, for an affirmative answer to the question, which the plaintiffs were desirous of eliciting, would only have corroborated the statement which the plaintiffs were seeking to contradict. In that statement the witness was credited with the ownership of eighty acres of land near Jenkins and some lots in Jenkins.

The plaintiffs' credit man was examined as a witness. He testified as to the statement made by Galloway and Company, and he was further interrogated as to the custom of plaintiffs in extending credit, that is, whether statements were required, and whether Galloway and Company had notice of this course of business. Objection was made by defendant to proof

of any such custom, and the court excluded the proffered evidence. This was error, but it was non-prejudicial, as the statement itself, which was confessed to have been made and delivered, states explicitly that it was given for the purpose of obtaining credit with the plaintiffs.

Against the objections of the plaintiffs, the defendant was allowed to show that some of the goods were not sold by plaintiffs. This was clearly erroneous, as the answer stated that the goods seized under the writ were the same goods purchased by Galloway and Company from the plaintiffs. It is urged, however, that the evidence was not prejudicial, as the instructions assumed that the goods in controversy were purchased from the plaintiffs. If this were the only error, we would probably not be justified in reversing the judgment on account of it.

The circuit court erred in the admission of proof that, subsequently to the institution of this suit, the plaintiffs presented to the assignee for allowance a portion of their claim. This evidence ought to have been excluded, as it was clearly irrelevant; but it was rendered nonprejudicial by the production by the plaintiffs of the demand itself, which showed that it was for $700 for the conversion of the remainder of the goods sold, credit having been given for the value of the goods which had been replevied.

At the instance of the defendant the court instructed the jury as follows: "The court instructs the jury that, before they can find for the plaintiffs in this case, you must believe from the evidence that the goods in question were bought of plaintiffs upon false and fraudulent representations made by Galloway and Company to plaintiffs, and that in making such sale plaintiffs *wholly relied* upon such false and fraudulent representations." This instruction lays down an erro-

neous rule. If, in making a contract, the unlawful acts of the defendant contribute thereto, he is answerable for the damages; and it is not for him to say that the plaintiff *might* have entered into the business notwithstanding his deceit or other wrongful conduct. In *Reynell v. Sprye*, 1 De Gex, M. & G. 708, Lord Justice CRANWORTH says: "Once make out that there has been anything like deception, and no contract resting in any degree on that foundation can stand. It is impossible to analyze the operations of the human mind, as to be able to say how far any particular representation may have led to the formation of any particular resolution, or the adoption of any particular line of conduct. No one can do this with certainty, even as to himself, still less as to another. Where certain statements have been made, all in their nature capable, more or less, of leading the party to whom they are addressed to adopt a particular line of conduct, it is impossible to say of any one such representation so made that, even if it had not been made, the same resolution would have been taken, or the same conduct followed. Where, therefore, in a negotiation between two parties, one of them induces the other to contract on the faith of the representations made to him, any one of which has been untrue, the whole contract is in this court considered as having been obtained fraudulently."

This view of the law was approved by the supreme court in the case of *Wannell v. Kem*, 57 Mo. 478. In that case the appellant induced the court to give an instruction that, before Kem could avoid the sale, it must appear that in making the sale he relied *solely* on the representations of Brolaski, and that the representations were false. The supreme court did not in terms condemn the instructions. As the judgment was affirmed, it was not necessary to do so; but the court

expressly stated that they were more favorable to the appellant than he had a right to expect. Where the question has arisen in other jurisdictions, the decision has been that, if the false representation of one of the contracting parties was *one* of the inducements to entering into the transaction, it is sufficient to avoid the contract. *James v. Hodsden*, 47 Vt. 127; *Cabot v. Christie*, 42 Vt. 121; *Morgan v. Skiddy*, 62 N. Y. 319. This we think to be a sound and wholesome rule; for no one ought to be allowed to take the benefits of a contract which in a measure was induced by his fraud or falsehood. It follows that the defendant's instruction is erroneous, as it required the jury to find that the plaintiffs, in making the sale an in extending the credit, relied solely on the alleged false representations of Galloway and Company.

The defendant's seventh instruction is as follows: "The court instructs the jury that, unless you believe the possession of Galloway and Company was fraudulent, then the plaintiffs can not maintain this suit, unless they first made a demand of said goods of the defendant, T. J. Ellmore." This instruction submitted a false issue. The question was whether the defendant by false and fraudulent representations had induced the plaintiffs to sell the goods on credit. If so, then no demand for their return was necessary, as the defendant stood in the shoes of his assignors.

In other respects the case seems to have been fairly tried, but for the errors pointed out the judgment of the circuit court will be reversed and the cause remanded. All the judges concur.