DAVID ADLER & SONS CLOTHING COMPANY, Appellant, vs. ° THORP, Assignee, Respondent.

*January 16 — January 31, 1899.*

(1) *Voluntary assignment: Evidence: Examination of assignor.* (2) *Replevin: Evidence of value.* (3) *Sale of chattels: Rescission.*

1. In an action of replevin against an assignee, to which the assignor is not a party, the latter is a competent witness, and it is not error to exclude his examination, taken under sec. 1702b, S. & B. Ann. Stats.

David Adler & Sons Clothing Co. vs. Thorp.

(sec. 1693*b*, Stats. 1898), when offered, not by way of impeachment, but as substantive evidence.

2. In replevin by the vendor of goods their value was alleged, both in the complaint and answer, to be a certain sum. Plaintiff's agent who had identified the goods testified that said sum was the invoice price and that that was their value. *Held*, that the court, in directing a verdict, properly fixed their value at that amount, although the same witness further testified that the goods had depreciated in value forty per cent. during the twenty-two days which had elapsed since their sale, because they had been unpacked and placed on shelves and some suits and sizes sold. *Jenkins v. Steanka*, 19 Wis. 126, distinguished.

3. A vendor of merchandise cannot rescind the sale and reclaim the goods merely because the purchasers, knowing themselves to be insolvent, did not disclose that fact, where no inquiries and no false statements were made and no artifice resorted to to mislead the vendor, and it does not appear that the goods were bought with the fraudulent intent of not paying for them.

APPEAL from a judgment of the circuit court for Door county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Felker, Doe & Felker* and *Charles L. Aarons*, and oral argument by *Charles W. Felker.*

For the respondent there was a brief by *Greene, Vroman, Fairchild, North & Parker*, and oral argument by *Charles E. Vroman.*

CASSODAY, C. J.   This is an action of replevin of certain goods and merchandise sold by the plaintiff's salesman to the firm of L. D. Thorp & Son, of Egg Harbor, April 26, 1896, and shipped to them by the plaintiff on the next day. May 15, 1896, that firm made a voluntary assignment to the defendant for the benefit of their creditors.  May 19, 1896, the plaintiff replevied the goods.  At the close of the trial the court directed a verdict in favor of the defendant, to the effect that he was the owner and entitled to the possession of the property described, that the value thereof was $634,

and that the defendant's damage for withholding the property was six cents. From the judgment entered thereon accordingly, with costs, the plaintiff brings this appeal.

1. Error is assigned because the court excluded the testimony of one of the assignors, taken before a county judge, under sec. 1702*b*, S. & B. Ann. Stats., being sec. 1693*b*, Stats. 1898. As indicated by the late revisers in their note to that section, " it was intended to aid the parties in an assignment to obtain evidence to be used on the final hearing or perhaps before such hearing." Id.; *In re Baker*, 72 Wis. 395. Such assignor is not a party to this action, but was a competent witness, and appears to have been sworn and examined as such on behalf of the plaintiff on the trial. Such testimony was not offered by way of impeachment, but as substantive evidence. There was no error in excluding such testimony.

2. Error is assigned because in directing a verdict the court fixed the value of the property at $634. That is the value of such property as alleged in the complaint, and also as expressly alleged in the answer. The plaintiff's witness, in its employ, who picked out the goods invoiced and sold to the firm, testified to the effect that he went to Egg Harbor to identify the goods so sold by the plaintiff; that he found the goods in the possession of the defendant, as such assignee; that he "identified *some* of the goods;" and that "the list attached to the complaint," which he held in his hand, was correct; and that the invoice price of the goods so identified was $634, and that their value was $634. These facts clearly distinguish the case at bar from *Jenkins v. Steanka*, 19 Wis. 126, particularly relied upon by counsel for the plaintiff. In that case, which was replevin, the trial court refused to allow the plaintiff to prove that the property detained was of less value than alleged in the complaint and not denied in the answer; and such ruling was held to be error. Here the plaintiff was allowed to prove, and did prove, that the value

was the same as alleged in both the complaint and answer. True, the same witness testified that the market value of those goods was about sixty cents on the dollar; that the goods had depreciated in value forty per cent. on account of broken lots, and lots which were sold out, and odd sizes which the plaintiff no longer had in stock. But the only ground or reason given for such depreciation during the twenty-two intervening days is that the clothing was unpacked in the store at Egg Harbor, and put on the shelves, and some suits and sizes sold out. This is insufficient to reduce what he himself had sworn to be the value, and what the complaint and answer both allege to have been the value.

3. Error is assigned because the court directed a verdict in favor of the defendant upon the merits. The contention is that the evidence is sufficient to have authorized the jury to infer that the firm bought the goods with the fraudulent intent of not paying for them, or, at least, that the firm failed to reveal facts to the plaintiff which would have prevented it from shipping the goods. The principal fact relied upon is that at the time of ordering the goods the firm was insolvent; and that that fact, and other circumstances, such as heavy indebtedness, poor trade, poor collections, general financial depresion, and the like, if communicated to the plaintiff by the firm, would have prevented the plaintiff from shipping the goods. The goods were ordered by the firm from the plaintiff's traveling salesman, Seligman, who solicited and urged the firm to make the purchase. Seligman was not sworn. It appears, however, that he called on the firm at their store, and solicited the order in the ordinary way and in the usual course of business, and the amount of the purchase was the usual amount for that season of the year; that he asked no questions as to the firm's financial condition, and that no statement or representation was made to him respecting such condition; that no more goods were purchased than were needed by the

firm for the continuance of the business; that the business did continue in the usual manner down to the time of the assignment; that during that time the proceeds of sales and collections were applied to the payment of the debts of the firm; that during the two weeks immediately prior to the assignment the firm paid some $400 on their debts; that no misappropriation was made for the benefit of the firm or their friends; that no preference was given or secured; that the stock and liabilities of the firm were substantially the same as in the spring of 1895; that the store had been run for years largely on credit; that at the time of purchasing the goods in question the firm expected to make a loan sufficient to pay up their liabilities, and secure the same on exempt property; that the failure to make the loan did not transpire until about the time of the assignment; that in May, 1896, after the firm had received the goods in question and placed them upon the shelves, and before making the assignment, certain creditors of the firm threatened attachments and legal proceedings, by which the firm was induced to make the assignment. No question is made as to the regularity or validity of the assignment. We assume, for the purposes of this case, that at the time of purchasing the goods the firm was insolvent and unable to pay their debts out of their nonexempt property, and that the members of the firm, or some of them, had reasonable ground for believing that such was their condition. The question recurs whether such facts were sufficient, in law, to authorize the plaintiff to rescind the sale and reclaim the goods.

This court has held, in effect, that where a person orders goods, knowing himself to be insolvent, without disclosing his insolvency, and with the preconceived purpose of not paying for them, the purchase is fraudulent, and the vendor, upon discovering the fraud, may rescind the contract and retake the goods, as against the vendee. *Lee v. Simmons*, 65 Wis. 526. The cases cited in support of such ruling concede

the law applicable to this case.   Thus, in *Nichols v. Pinner*, 18 N. Y. 295, there cited, it was expressly held that: " The mere omission of a purchaser of goods to disclose his insolvency to the vendor is not a fraud for which the sale may be avoided.   When no inquiries are made of the vendee on the subject, and he makes no false statements, nor resorts to any artifice to mislead the vendor, it is not, in general, fraudulent in him to remain silent in respect to his pecuniary condition.   An honest, though abortive, purpose to continue business and pay for the goods is consistent with the vendee's knowledge of his own insolvency; and the purchase is not fraudulent when made with such intent, though founded in delusion and unreasonable expectations."   Such ruling has never been altered nor shaken in New York. *Morris v. Talcott*, 96 N. Y. 107; *Rothmiller v. Stein*, 143 N. Y. 594.   The same rule maintains in other states.   *Morrill v. Blackman*, 42 Conn. 324; *Illinois Leather Co. v. Flynn*, 108 Mich. 91; *People ex rel. Ellis v. Healy*, 128 Ill. 9, 17.   The principles of law thus quoted from 18 N. Y. were expressly sanctioned by this court in *Garbutt v. Bank of Prairie du Chien*, 22 Wis. 384, 392; and the same is conceded in *Lee v. Simmons*, *supra*, and expressly sanctioned in *Burchinell v. Hirsh*, 5 Colo. App. 500.   The difficulty with the case at bar is that the plaintiff has failed to prove facts and circumstances sufficient, when viewed in the most favorable light for the plaintiff, to authorize a jury to find that the firm purchased the goods by any misrepresentation or artifice, or with any preconceived purpose of not paying for them.

We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

BARDEEN, J., took no part.