Hart and others vs. Moulton.

HART and others, Appellants, vs. MOULTON, Sheriff, Respondent.

*September 29 — October 20, 1899.*

*Replevin: Provisional remedy not essential to action: Res adjudicata: Parties and privies: Sale of chattels: False representations: Intent to defraud.*

1. The provisional remedy in a replevin action under the Code, to obtain immediate possession of the subject of the controversy, is not essential to the commencement or maintenance of the action, hence any error in such proceeding does not affect the jurisdiction of the court to entertain such action and proceed therein to judgment.

.2. One Nelson obtained possession of property from plaintiffs by inducing them by false representations to sell the same to him. Part of such property Nelson thereafter sold to innocent third persons, and the balance was taken on an execution issued to enforce a judgment against him. Subsequently, plaintiffs rescinded the sale for fraud and commenced this action against the officer to recover possession of the property held by him, and a second action against Nelson for damages in respect to the property that could not be re-·covered by reason of its having been sold by him to innocent third persons. The action for damages proceeded to judgment. Such judgment was offered in evidence on the trial in this action as binding upon the defendant, on the ground that he could claim no better right than Nelson. The evidence, on objection, was ruled out. *Held,* that the ruling was proper, first, because if defendant obtained any interest in the property in controversy it vested in him before the commencement of the action against Nelson; and second, because the property in controversy in this action is not the same property in controversy in the action against Nelson.

·3. The doctrine of *res adjudicata* extends to and binds privies of the parties to the litigation as well as the parties themselves, but privity, under such rule, exists only in relation to the subject matter of such litigation. The decision in an action becomes a rule of property as to the subject matter thereof and passes with it to all persons subsequently claiming under such parties, but does not attach to any other property, the limit of its effect as to privies being the limit of the particular property, property right, subject matter, or thing involved in the litigation.

4. A sale of property procured by false representations, and a purchase with existing intent on the part of the purchaser not to pay for the

subject of his purchase, are distinct actionable wrongs. The former is complete without the existence of an intent not to pay for the property, and the latter is complete though there be no false representations to induce the sale. In case of the latter wrong, false representations and undisclosed insolvency are not necessary elements, but are evidentiary facts tending to establish the intent not to pay, though the latter of itself is not sufficient to establish such fact.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

Plaintiff sold a quantity of merchandise on credit to one Cassius B. Nelson, a merchant. After the property had been added to Nelson's stock in his store and some portion of it sold, the entire stock was seized by the defendant, as sheriff, on an execution issued on a judgment against Nelson. Plaintiffs thereupon rescinded the sale upon the ground that they were induced to make it by Nelson's false representations. This action was then commenced to recover that portion of the property which could be identified in the hands of the sheriff, and an action was brought against Nelson for damages, there being some property that could not be found.

The complaint in this action was in the usual form in a replevin action. Proceedings to obtain immediate possession of the subject of the action were taken and the object of such proceedings accomplished. Defendant moved the court to quash the proceedings for the provisional remedy and to dismiss the action, because the person who made the affidavit was not one of the plaintiffs, and it did not state that such person was authorized so to do, or the means or source of his information, or that the property was within the jurisdiction of the court; and further, because the affidavit did not contain a description of the property, and the requisition to the officer to take the property from the defendant and deliver the same to the plaintiffs was indorsed on the back of a wrapper attached to, instead of on, the affidavit,

and the officer to whom the papers were delivered did not indorse his approval of the bond at the time of or before the date of service. The court denied the motion, holding the papers substantially perfect except for the failure to state why the affidavit was not made by one of the plaintiffs and that the person making it was authorized so to do, and the source of his knowledge, which defects were held curable by amendment. Leave to make the necessary amendment to accord with the court's ruling was granted. Both parties filed exceptions to such ruling. Plaintiffs did not amend the affidavit.

Defendant answered, putting in issue the allegations of the complaint, justifying under the execution against Nelson, under which the property was seized as before stated, and pleading in abatement the same defects in the papers used to obtain possession of the property which were urged on the motion before referred to. The plea in abatement was held bad on demurrer.

On the trial a judgment rendered in the action against Nelson for damages, and the record in such action, were offered in evidence, and on objection by the defendant were rejected. The trial resulted in a verdict and judgment for defendant, from which plaintiffs appealed.

For the appellants there were briefs by *Tenney, Hall & Tenney*, and oral argument by *F. W. Hall*.

For the respondent there was a brief by *Bashford, Aylward & Spensley*, and oral argument by *R. M. Bashford*.

MARSHALL, J. Respondent's attorneys urge that appellants have no standing in this court because the lower court failed to obtain jurisdiction of the subject matter of the action for want of a proper affidavit in the proceedings to obtain possession of the property in advance of a settlement of the controversy between the parties, and because of some other defects claimed in such proceedings. The learned

Hart and others vs. Moulton.

·counsel for respondent rely on the rule that prevailed in the ·action of replevin at common law, which could be commenced only by the issuance of a writ of replevin. The writ being essential to the commencement of the action, everything necessary to the issuance thereof was deemed jurisdictional. Such is now the case in actions in justice's ·court for the recovery of personal property and actions there commenced by writ of attachment. But it hardly admits ·of serious discussion, at this late date, but that such an action in the circuit court, commenced by the service of a summons like any other action, and proceedings to obtain possession of the subject of the controversy in advance of the judgment, are sufficiently independent of each other that the latter may be omitted entirely at the election of the plaintiff. The statute on the subject is so plain, and the long-settled practice so well understood by the profession, that we hardly feel justified in going much further on this branch of the case than to refer to such statute. Sec. 2717, Stats. 1898, provides that "the plaintiff in an action to recover the possession of personal property may, at the time of issuing the summons or at any time before answer, claim the immediate delivery of such property." It will be noted that the very language of the section indicates unmistakably that the action may be commenced and immediate possession of the property not be claimed at all. The section that follows governs the proceedings under the quoted section and requires substantially the same affidavit as was formerly required to secure a writ of replevin. The mere indorsement upon, in connection with, the affidavit, requiring the sheriff to take the property from the defendant and deliver the same to the plaintiff serves all the purposes of a writ not covered by the summons and the service of it. The distinction between the old action of replevin and the action under the Code has been many times pointed out by this court. *Dudley v. Ross*, 27 Wis. 679; *Bigelow v. Doolittle*, 36

Hart and others vs. Moulton.

Wis. 115; *Brewster v. Carmichael,* 39 Wis. 456.   Where the property in a replevin action is taken and afterwards returned to the defendant and retained by him, or where it is not taken at all and is not recovered by the judgment, the action results substantially the same as an action of trover.

The judgment in this action against Nelson was properly rejected because the defendant was not in privity with him for two reasons: first, because the defendant's interest in the property, if he obtained any at all under the execution, was acquired before the commencement of the action against Nelson; and second, because the property involved in this action is not the property involved in that action.

It is unquestionably the law that a judgment of a court of competent jurisdiction is binding between the parties to the particular action litigated regarding the subject thereof, either as a plea in bar or evidence in estoppel, not only as to every question actually presented and considered, and upon which the court rested its decision, but every point within the issues that might have been presented and decided in the cause, and is likewise conclusive in any subsequent action between the same parties upon a different subject matter, as to every question actually litigated and decided in the former action.   *Wentworth v. Racine Co.* 99 Wis. 26; *Cromwell v. Sac Co.* 94 U. S. 351; *Davis v. Brown,* 94 U. S. 423; *Campbell v. Rankin,* 99 U. S. 261; *Nesbit v. Riverside Independent Dist.* 144 U. S. 610.   It is further the law that a judgment is as binding on privies as on parties, as to questions actually decided and upon which the judgment rests, whether it be rendered on insufficient evidence, or false evidence, or erroneous notions of the law.   So long as the judgment stands it may be invoked in the court where rendered, and in all courts, between the parties to the action and their privies, as the infallible truth.   Cooley, Const. Lim. 62; *Case v. Hoffman,* 100 Wis. 336.

Though the doctrine stated in the foregoing is firmly es-

Hart and others vs. Moulton.

tablished and found in general terms in all text-books and
many adjudications, its application is not always free from
difficulty, as evidenced by the position of counsel in this
case.   It is not questioned but that if Nelson were a party
to this action the judgment in the action for damages would
be conclusive against him, but it does not follow that the
defendant has no better right than Nelson.   The doctrine
of *res adjudicata* does not go that far unless the respondent
is in privity with Nelson.   It is assumed by appellants that
the essential. of privity exists, because the right upon which
respondent relies is dependent upon the right of Nelson.
The difficulty is that the right of property here involved is
not that involved in the former litigation.   Privies, whether
in blood, or in law, or in estate, occupy that relation to oth-
ers because of derivative rights of property.   Privity relates
to persons in their relation to property and not to any ques-
tion independent of property.   In the doctrine of *res adju-
dicata*, privity extends no further than the particular subject
matter or property, the status of which was determined by
the judgment as to that particular thing.   A person subse-
quently dealing with it, dependent for his right to do so
upon a title acquired of one of the parties to the litigation
after that title was impressed by the result of such litiga-
tion, in a controversy with the adverse party or a person
claiming under him, is concluded by the judgment.   Such
judgment, in that situation, fixes the status of the property
beyond question, whether it was right or wrong.   The mere
personal effect of the judgment, however, is absolutely con-
fined to the parties to the litigation.   It does not attach to
and become a rule of property as to any other thing than
the particular subject of the controversy which was closed
by the judgment.   Failing to keep distinctly in mind that
privity relates to property only in the doctrine of *res adju-
dicata*, and to the particular property forming the subject
of the former litigation, often leads courts and practitioners

Hart and others vs. Moulton.

into confusion and error. The term is applicable only to the situation of mutual succession or relation to the same right of property. Herman, Estoppel, § 139; *McDonald v. Gregory*, 41 Iowa, 513; *New Orleans v. Citizens' Bank*, 167 U. S. 371.

We have had occasion heretofore to refer to the inaccurate manner in which the doctrine of *res adjudicata* is often stated, regarding the binding force of a judgment upon parties to the litigation. *Wentworth v. Racine Co.* 99 Wis. 26. We may here say, properly, there is quite as much absence of precision in the language ordinarily used in stating the effect of the judgment upon privies as upon the parties to the litigation. The mere statement that a judgment is binding on parties and privies, is vague to many minds in that, in its literal sense, it is not confined as to privies to the particular subject of the litigation in which the judgment was rendered. The difficulty in that regard would be avoided if the rule were always so stated as to confine the conclusiveness of a judgment as to privies to the particular property, property right, or thing in controversy in the action.

It is clear from the foregoing that the decision of the trial court rejecting the evidence of the result of the proceedings against Nelson was proper. While defendant claims under Nelson, he is not a successor to the same property involved in the former litigation. The judgment in the first suit as to the parties thereto and persons claiming under them, was stamped upon, and became a rule of property of, the particular thing involved in that suit. There is no privity here, as to a thing involved in the former litigation, because the subject of this action was, as to Nelson, affected by the same question as that formerly decided.

There was evidence from which a jury might have found in plaintiffs' favor, either or both of two distinct wrongs: first, that the goods were obtained by false representations as to the financial ability of Nelson; second, that Nelson

obtained the goods with intent not to pay for them. The court was requested to instruct the jury in substance that either of such wrongs was sufficient to entitle plaintiffs to rescind the sale and recover back the subject thereof, which request was refused. The jury were then instructed, in effect, that though the goods were obtained of plaintiffs by false representations, plaintiffs could not recover if Nelson, notwithstanding such false representations, intended in good faith to pay for the property; that is to say, that to obtain property by purchase induced by representations however false, is not actionable fraud, whatever may be the actual result to the seller, in the absence of intent not to pay therefor.

The refusal to instruct the jury as requested, and the instruction given as stated, constitute the errors upon which appellants' counsel chiefly rely for a reversal. The first impression made by the proposition that a person may obtain property by purchase from another by means of false representations, and retain it against the will of the vendor if such person intended to pay according to his contract, was that it was hardly worthy of serious consideration. Certainly, if such be the law, our system is sadly imperfect. Respondent's counsel cite numerous cases to sustain the ruling of the trial court, which we have carefully examined with the result that in our opinion none of them favors such ruling, but all are against it. It is needless to review the cases at any great length. A few may be taken as a type of all. In *Burrill v. Stevens*, 73 Me. 395, the sole question was, If one purchases property upon credit, with a positive intention, entertained and acted upon at the time, of never paying for the property, is it such a fraud as will entitle the seller to avoid the sale in the absence of any fraudulent representations or false pretenses characterizing the transaction? It will be seen by reading the opinion that it was assumed that a sale induced by false representations on the part of

the vendee could be rescinded. That was a question not in the case. There were no false representations, but there was a distinct intent, entertained by the buyer at the time he made the purchase, never to pay for the property obtained. So the judicial inquiry was whether that alone constituted adequate ground for a rescission of the sale and recovery back of the property.

In *Thompson v. Peck*, 115 Ind. 512, there was a mere omission on the part of the vendee to disclose to his vendor his insolvency at the time of making the purchase. The question of whether that was sufficient ground for a rescission of the sale in the absence of any intent not to pay, was decided in the negative in accordance with numerous authorities on the subject and the rule distinctly laid down by this court. *David Adler & Sons C. Co. v. Thorp*, 102 Wis. 70; *Consolidated M. Co. v. Fogo, ante*, p. 92. The language of Judge MITCHELL, in the Indiana case, to the effect that, in order that goods may be reclaimed when obtained on a sale in the regular course of business, there must be some artifice, or false pretense, or fraudulent suppression of the truth, which enables the purchaser to obtain possession of the goods, and it must appear that he intended at the time of making the purchase not to pay for them, must be read with reference to the particular question then under consideration,— whether mere neglect of the vendee to disclose his insolvency will warrant a rescission of the sale. To that the court gave a negative answer, saying, in effect, that it would require a specific intent not to pay, and that the failure to disclose the condition of the insolvency, there being no inquiries on the subject and no false representations made, was not sufficient to warrant a rescission. True, the language of Judge MITCHELL is somewhat liable to mislead, if one does not have in mind the settled law on the subject and take into consideration the question before the court. Similar misleading language was used by the judge who

wrote the opinion in *Taylor v. Mississippi Mills*, 47 Ark.
247, but in a later case, *Bugg v. Wertheimer-Schwartz S. Co.*
64 Ark. 12, the court took occasion to state that such lan-
guage was inaccurate unless read in connection with the
facts of the case and the question under consideration, such
question being, Is a preconceived intent not to pay sufficient
to warrant the rescission of a sale? In *Morse v. Dearborn*,
109 Mass. 593, the question was, If a person falsely repre-
sent to another his financial condition for the purpose of
obtaining a line of credit with such other, and subsequently
buy goods of such other upon credit so established, the
vendor relying upon such false representations, can the
vendor, on discovering the truth, reclaim the subject of
the sale?

A review of the rest of the long list of cases cited by ap-
pellants' counsel would only be a continuation of the show-
ing thus made. The idea that a sale induced by false rep-
resentations is not voidable in the absence of an intent on
the part of the purchaser not to pay, comes from confusing
statements made in judicial opinions to the effect that a
mere failure by the vendee to disclose his insolvency, unac-
companied by any false pretenses or artifice, is not sufficient
to warrant a rescission of the sale,— that there must be in
addition an intent not to pay, with the substantive wrong
of obtaining goods by false pretenses. In many of the cases
found in the books, where there were no false representa-
tions and the ground upon which the recovery was sought
was intent not to pay, language is used to the effect that
mere insolvency and failure to disclose it is not sufficient of
itself to establish the essential element of intent not to
pay,— that there must be, in addition, false representations
of some kind, or some artifice resorted to in order to obtain
possession of the goods. There is no question anywhere in
the books but that a sale induced by false pretenses alone is
voidable, or but that a purchase with preconceived intent

not to pay is also voidable; but the circumstances, from which the intent mentioned may be inferred, are the subject of much discussion, in which, as before indicated, it will be found stated, over and over again, that false representations of some kind are necessary if the only other evidentiary fact is insolvency of the buyer. Such statements of the law led counsel for the respondent, evidently, and the trial court as well, to the erroneous conclusion that a formed intent not to pay, and false pretenses as well, are essential elements to a complete wrong warranting a rescission of a sale. Mere evidentiary circumstances, so treated in the law, the trial court held were essential elements of an actionable wrong.

Our own decisions are replete with precedents where false representations of material facts, made to induce a sale, relied upon by the seller, were held sufficient to render the sale voidable at the election of the seller, and that, whether the purchaser knew or did not know the representations made by him were false, it being held sufficient if he either knew or ought to have known the truth of his statements before making them. *McKinnon v. Vollmar*, 75 Wis. 82; *Montreal River L. Co. v. Mihills*, 80 Wis. 540; *Porter v. Beattie*, 88 Wis. 22; *Gunther v. Ullrich*, 82 Wis. 222; *Beetle v. Anderson*, 98 Wis. 5; *Friend Bros. C. Co. v. Hulbert*, 98 Wis. 183; *David Adler & Sons C. Co. v. Thorp*, 102 Wis. 70. That is in accordance with the doctrine found laid down in the standard text-books. Benj. Sales, § 451. The only distinction recognized anywhere, between a sale induced by fraudulent representations and a purchase with intent not to pay, as substantive, independent, actionable wrongs, is that in the former the transaction is deemed to be voidable and in the latter absolutely void. That distinction is made in some jurisdictions, but, as said by the text writers, it is of no practical importance.

Authorities may be cited without substantial conflict, and

much beyond the limits that can be devoted it in this opinion, in support of the doctrine stated. Many of such authorities are found in the brief of the appellants. *Hodgeden v. Hubbard*, 18 Vt. 504; *Mooney v. Davis*, 75 Mich. 188; *Reid v. Cowduroy*, 79 Iowa, 169; *Newell v. Randall*, 32 Minn. 171; *Stephenson v. Weathersby* (Ark.), 45 S. W. Rep. 987; *Bugg v. Wertheimer-Schwartz S. Co.* 64 Ark. 12; *Burnham v. Ellmore*, 66 Mo. App. 617; *Burnham v. Jacobs*, 66 Mo. App. 628; *McKenzie v. Weineman*, 116 Ala. 194; *Jandt v. Potthast*, 102 Iowa, 223; *Mauger v. Slavin*, 11 App. Div. 483; *Woonsocket R. Co. v. Loewenberg Bros.* 17 Wash. 29; *Stevenson v. Marble*, 84 Fed. Rep. 23; *Huthmacher v. Lowman's Sons*, 66 Ill. App. 448.

In *Bugg v. Wertheimer-Schwartz Co.* 64 Ark. 12, cited by appellants' counsel and before referred to, the precise proposition here contended for by respondent's counsel was urged upon the attention of the court and was repudiated as contrary to the settled law, many authorities being cited on the subject, including *Judd v. Weber*, 55 Conn. 267, where it was said that 'when goods are obtained by false representations as to the financial standing of the purchaser, an intent of the buyer to pay may lessen the moral turpitude of the act, but it does not suffice to antidote and neutralize the intentional false statement which has accomplished its object of benefiting the purchaser and misleading the seller to his injury.'

From the foregoing the following principles may be stated as established: If a person misrepresent to another material facts, knowing, or under such circumstances that he ought to know, the truth, for the purpose of inducing such other to sell property to him, and such other, without negligence, relying upon such representations, make the sale, he can, upon discovering the truth, rescind the transaction and recover back his property, saving the rights of *bona fide* purchasers or incumbrancers thereof in the mean time. To

obtain property by false representations in the manner indicated, constitutes a substantive, actionable wrong, without regard to whether the vendee does or does not intend to pay for the subject of the purchase. If a person purchases property of another with intent not to pay for the same, the vendee may rescind the sale and recover back the subject thereof, as in case of the circumstances first stated. False representations to obtain the property are not a necessary element to make a complete cause of action under the circumstances covered by the second proposition, nor is intent not to pay essential to a complete cause of action under the circumstances covered by the first proposition. The former is complete by the concurrence of false representations of material facts, regarding which the falsifier knows or ought to know the truth, for the purpose of inducing a sale of property to him, and the consummated contract of sale, the seller relying upon such false representations. In such circumstances the law will not permit the wrongdoer to profit by his fraud if the wronged party otherwise elect, saving the rights of innocent third persons. The latter is complete by the purchase of property, the transaction being characterized by a secret, definitely formed intent on the part of the purchaser never to pay for the subject of the purchase. While false representations to obtain possession of the property, and insolvency of the purchaser, are evidence bearing on the existence of the fraudulent intent, neither of such elements is essential to a cause of action to recover back the property. They are evidentiary facts tending to show the fraudulent purpose not to pay. That is all. The two circumstances together, or that of false representations made to obtain possession of the property alone, may warrant a finding of the fraudulent intent mentioned, but the mere fact of undisclosed insolvency, of itself, is not sufficient. *David Adler & Sons C. Co. v. Thorp,* 102 Wis. 70. Such stated principles are fatal to the judgment appealed

from.   The trial court was clearly wrong as to the law applicable to the evidence in the case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.